UNITED STATES of America, Appellee,

v.

Lyman CRAY, a/k/a Lynn Ward Carey, Appellant.

No. 93–3222.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 19, 1994.

Decided Feb. 24, 1995.

---

Mary E. Davis, Washington, DC, argued the cause for appellant. With her on the brief was Thomas Abbenante, appointed by the court, Washington, DC.

G. Michael Lennon, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John R. Fisher, Thomas C. Black and Cherry Marie Destura, Asst. U.S. Attys., Washington, DC.

Before SILBERMAN, GINSBURG, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Lyman Cray pled guilty to conspiracy to possess with intent to distribute cocaine base, in violation of 18 U.S.C. § 371, and possession of a firearm during a drug-trafficking offense, in violation of 18 U.S.C. § 924(c). Prior to sentencing, Cray moved to withdraw his guilty plea on the ground that his codefendant had coerced him into accepting the plea bargain. After an evidentiary hearing, the learned district court denied Cray's motion and sentenced him to 10 years' incarceration to be followed by three years of supervised release.

Cray now appeals the denial of his motion to withdraw his guilty plea. Primarily be-

cause Cray has not shown that his plea was entered in violation of Federal Rule of Criminal Procedure 11, we affirm.

## I. Background

Lyman Cray, John Whitaker, and Steven Bridgeforth were originally charged with various drug and firearm offenses in an 11–count indictment. Before their scheduled trial Whitaker pled guilty to two of the counts and agreed to testify against his codefendants. Bridgeforth and Cray then agreed to plead guilty on the same terms. When Bridgeforth and Cray appeared before the court to enter their guilty pleas, however, Cray's attorney told the judge that Cray had just changed his mind and decided to go to trial. The Government was then granted a short recess in order to prepare its case against Cray, which would now include Bridgeforth's testimony.

At some point during the recess, Bridgeforth and Cray were left together in a holding cell. After the recess, Cray's attorney informed the court that Cray had again reconsidered his position and would plead guilty after all. When Cray had entered his plea, the court advised him as required by Federal Rule of Criminal Procedure 11(c), inquired into the voluntariness of his plea, pursuant to Rule 11(d), accepted the plea, and adjudged the defendant guilty of the two offenses charged in the superseding information.

During the Rule 11 colloquy, Cray admitted to each element of the crimes charged, fully agreed with the Government's proffer of evidence, and was advised of his possible sentence. When the court specifically said: "You're not going to be able to take [your plea] back after today. Do you understand that?" Cray answered: "Yes, I do understand that." When asked: "Has anyone forced, threatened, or coerced you in any way into making a guilty plea here this afternoon?" Cray responded: "No, sir." To the question: "Are you entering your pleas of guilty to each of these crimes knowingly, freely, and voluntarily, of your own free will, because you are in fact guilty, and for no other reason?" Cray said: "Yes, I am."

Nevertheless, some two-and-a-half months later but still prior to his sentencing, Cray came before the district court asking to withdraw his plea of guilty. This time Cray said that in pleading guilty "I just went along with my codefendant without really thinking about the consequences for myself." His attorney explained further: "Basically, as I understand it, he's saying that when the attorneys were not present, it was the pressure that was being placed upon him by his codefendant in this case that led him to go along with this."

The district court held a two-day hearing on Cray's motion to withdraw his plea. Cray testified that Bridgeforth tried to convince him to accept the plea bargain so that Bridgeforth would not have to testify against him, and therefore be labeled a "snitch" in prison. Cray admitted that Bridgeforth had neither threatened nor physically intimidated him, but he maintained that he had pled only because Bridgeforth had pressured him to do so. ("I've never turned my back on you, so you've got to help me and not turn your back on me.") For his part, Bridgeforth denied having threatened, intimidated, or coerced Cray in any way. He testified that Cray told him he had decided to go to trial, and that Bridgeforth had simply replied: "Well, that's your right. You fight. I'm trying to take a cop." Cray also testified that he had told his probation officer that he was guilty of only "some" of the offense behavior charged, though in response to questions from the court he acknowledged that he had made that statement with regard to the original 11–count indictment rather than the two-count information to which he ultimately pled guilty.

At the conclusion of the hearing, the court denied Cray's motion. The court found that Cray had not made an adequate assertion of his innocence of the charges against him. In addition, specifically crediting Bridgeforth's testimony and finding Cray's statements false, the court found that Cray's claim that Bridgeforth had intimidated or coerced him into pleading guilty was false, and therefore concluded that Cray's guilty plea was knowing, free, and voluntary, and was taken in full compliance with Rule 11. Finally, the court

found that the delay between Cray's guilty plea and the filing of his motion would substantially prejudice the Government's ability to prosecute the case.

On appeal, Cray argues against the district court's conclusion that his plea was knowing and voluntary, essentially asking us to find that the district court abused its discretion in crediting Bridgeforth's testimony over his own. He also argues that the statement he made to his probation officer to the effect that he was guilty of only "some" of the offense behavior alleged in the original indictment shows that he maintained his innocence before the district court. Finally, he contends that the Government would not have been unduly prejudiced by a belated trial. As set out below, we conclude the district court did not abuse its discretion in denying Cray's motion.

## II. Analysis

■■■■ Under Federal Rule of Criminal Procedure 32(d), the district court may in its discretion grant a motion to withdraw a guilty plea made before sentence is imposed "upon a showing by the defendant of any fair and just reason." *See Kercheval v. United States,* 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927) ("on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence"). At the same time, however, "a guilty plea is a grave and solemn act ... accepted only with care and discernment," *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); the district court is therefore required to set it aside only for good cause shown. Indeed, we have long held that a district court's ruling in this situation should be reversed only for an abuse of discretion. *See, e.g., Brown v. United States,* 13 F.2d 298, 299 (D.C.Cir.1926); *Tomlinson v. United States,* 93 F.2d 652, 654 (D.C.Cir.1937). Not surprisingly, therefore, reversal is "uncommon." *United States v. McKoy,* 645 F.2d 1037, 1038 (D.C.Cir.1981).

Although the standard has long been the same, the particular inquiry we undertake in order to determine whether a district court has abused its discretion to deny withdrawal

of a guilty plea has not been consistent over the years. Prior to 1975, this court generally upheld the denial of a motion to withdraw a guilty plea as long as the defendant had made the plea knowingly and voluntarily. *See, e.g., Everett v. United States,* 336 F.2d 979, 984 (D.C.Cir.1964). Judge Wright undertook a more thorough analysis, however, in *United States v. Barker,* 514 F.2d 208, 211 (1975) (en banc) (affirming convictions of "foot soldiers of the Watergate Break-in"). The defendants in *Barker* sought to withdraw their guilty pleas on the ground that they had entered the pleas under the erroneous belief that they were engaged in a "secret, confidential, and sensitive national security operation," which they had felt constrained not to disclose. *Id.* at 216.

In *Barker* the court required that a Rule 32 movant make out a credible claim of legal innocence as a threshold matter: "If the movant's factual contentions, when accepted as true, make out no legally cognizable defense to the charges, he has not effectively denied his culpability, and his withdrawal motion need not be granted." *Id.* at 220. As the court noted, however, "were mere assertion of legal innocence always a sufficient condition for withdrawal, withdrawal would effectively be an automatic right," *id.* at 221, which would eviscerate the rule. Therefore, in addition to requiring that a defendant who would withdraw his plea make out a legally cognizable defense, the court required him to give a good reason "why the defenses now presented were not put forward at the time of original pleading." *Barker,* 514 F.2d at 221. The key to this inquiry is whether the plea was entered in accordance with Rule 11. If the plea is defective under Rule 11, then withdrawal "should almost always be permitted"; but if the plea was properly accepted, then "withdrawal is not an automatic right and more substantial reasons for delay must generally be asserted." *Id.* Finally, the court considered the prejudice that the Government would suffer were it belatedly forced to try the case: "The movant's reasons must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially preju-

diced the Government's ability to prosecute the case." *Id.* at 222.

In 1983, Rule 32(d) was amended to take its current form, specifically incorporating "the 'fair and just' standard which the federal courts, relying upon dictum in *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), [had] consistently applied to presentence motions" to withdraw guilty pleas. FED.R.CRIM.P. 32(d), Advisory Committee's Note (1983). The Advisory Committee specifically endorsed our holding in *Barker* that a district court's exercise of discretion to deny a motion to withdraw a plea should be reviewed by considering whether the defendant has asserted a legal defense to the charge and, more importantly, whether a defendant has shown a defect in the taking of his plea. Especially in light of "the great care with which pleas are taken under [the then-recently] revised Rule 11," the Committee concluded, "there is no occasion to inquire into the matter of prejudice [to the Government] unless the defendant first shows a good reason for being allowed to withdraw his plea." The Committee squarely rejected the contrary approach illustrated by *United States v. Savage,* 561 F.2d 554, 557 (4th Cir.1977) (where Government would not be prejudiced defendant may withdraw plea notwithstanding absence of Rule 11 violation).

■ Read together, *Barker* and Rule 32 set out three factors to consider in order to establish whether the district court abused its discretion when it refused to allow the defendant to withdraw his plea of guilty. First, a defendant generally must make out a legally cognizable defense to the charge against him. Second, and most important, the defendant must show either an error in the taking of his plea or some "more substantial" reason he failed to press his case rather than plead guilty. Finally, if those two factors warrant, the court may then inquire whether the Government would have been substantially prejudiced by the delay in going to trial. (Delay subsequent to the district court's denial of his motion would not ordinarily be chargeable to the defendant.)

We have often considered the three *Barker* factors as if they were all simply to be bal-anced against one another in each case. *See United States v. Ford,* 993 F.2d 249 (D.C.Cir. 1993) (allowing withdrawal where there was Rule 11 error, defendant asserted innocence, and Government would not have been prejudiced); *United States v. Horne,* 987 F.2d 833 (D.C.Cir.1993) (denying withdrawal where no Rule 11 error and no assertion of innocence, although Government would not have been prejudiced); *United States v. Watley,* 987 F.2d 841 (1993) (allowing withdrawal where there was Rule 11 error and Government would not have been prejudiced, without considering whether defendant adequately asserted a legally cognizable defense); *United States v. Abreu,* 964 F.2d 16 (D.C.Cir.1992) (denying withdrawal because no Rule 11 error, although defendant asserted defense and Government would not have been prejudiced); *United States v. Mathis,* 963 F.2d 399 (D.C.Cir.1992) (denying withdrawal where defendant neither made out violation of Rule 11 nor asserted his innocence, although Government would not have been prejudiced). Indeed, apart from emphasizing that the regularity of the Rule 11 proceedings is the "most important[ ]" factor, *see, e.g., Horne,* 987 F.2d at 837 (quoting *Mathis,* 963 F.2d at 410), we have not adhered to any more structured inquiry.

In fact, however, none of our cases would have been decided differently if the only inquiry undertaken were whether the defendant's guilty plea was taken in compliance with Rule 11. On the one hand, we have never held that a district court abused its discretion in denying a motion to withdraw a guilty plea where the defendant failed to show some defect in the taking of his plea under Rule 11. *See, e.g., Abreu,* 964 F.2d at 19 ("The district court retains some discretion to deny a withdrawal motion, even when the defendant asserts a plausible legal defense and the Government had suffered no prejudice"). On the other hand, where the defendant has shown his plea was taken in violation of Rule 11, we have never hesitated to correct the error. *See, e.g., Watley,* 987 F.2d at 848 (reversing denial on ground that plea was not made voluntarily where all participants including district court were mistaken about mandatory minimum sentence).

Further, bearing in mind that the exceptional case may raise an exceptional concern, *see generally Barker,* 514 F.2d at 223 ("[y]ou do not assemble a case of this kind for trial twice") (quoting *United States v. Lombardozzi,* 436 F.2d 878 (2d Cir.1971)), we note that prejudice to the Government has never been a determinative factor in our decision to affirm the district court's decision to deny a motion to withdraw a guilty plea. As noted above, even where there would have been no such prejudice we have never held that a district court has abused its discretion unless one of the first two factors warranted reversal. *See, e.g., Abreu,* 964 F.2d 16; *Mathis,* 963 F.2d 399; *Watley,* 987 F.2d 841. Likewise, in the cases where a defendant has shown some error in the taking of his plea, alleged prejudice to the Government has never prevented us from correcting the district court's error. *See, e.g., Ford,* 993 F.2d 249; *Watley,* 987 F.2d 841. While it may indeed be difficult to assemble some cases twice, we find it hard to envision the case in which a defendant could be denied an opportunity to go to trial because he had earlier entered a defective (e.g., involuntary) guilty plea.

■ Therefore, we will likely achieve greater economy and perhaps also clarity if we begin our analysis in such cases by assessing whether the defendant's plea was taken in compliance with Rule 11. If we determine that there was no error in the taking of the defendant's plea, we will be extremely reluctant to reverse the district court, even if the defendant makes out a legally cognizable defense to the charges against him. That is, a defendant who fails to show some error under Rule 11 has to shoulder an extremely heavy burden if he is ultimately to prevail.

■ This more structured inquiry—focusing first on the most important, indeed, the determinative factor in all our decisions to date—will both conserve the resources of the bench and provide better guidance to the bar, and we adopt it today as the presumptive framework for analyzing a district court's denial of a presentence motion to withdraw a guilty plea under Rule 32(d). It will conserve resources because the court will not need exhaustively to examine all three issues in every case. As a result, our decisions will inform the bar of what is required to make out each element on appeal, without confusing matters by implying that there are simple trade-offs to be made among them. This sequential inquiry will properly focus the efforts of defense counsel and the Government upon the key issue raised by the appeal of an order denying a motion to withdraw a guilty plea: Has a defendant knowingly and voluntarily waived his right to meet the charges brought against him?

We note that our framework for reviewing a denial of a presentence motion to withdraw a guilty plea is not intended to fetter the sound exercise of discretion by the district court. *See Horne,* 987 F.2d at 839 (Buckley, J., concurring) ("[I]t is not our task to determine whether a guilty plea should have been denied; it is to determine whether the district court abused its discretion in denying it"). As we have noted, the precise import of the "fair and just" standard of Rule 32(d) "lies buried in the unreported actions of federal trial judges." *Barker,* 514 F.2d at 220.

■ With this more structured approach in hand, we quite readily conclude that the district court did not abuse its discretion in denying Cray's motion to withdraw his plea. Cray's claim that his plea was defective under Rule 11 because he was coerced by Bridgeforth does not warrant our reversing the district court's decision. There is simply no room in this record for doubt that Cray's guilty plea was attended by all the required procedural safeguards. Indeed, the court conducted a textbook Rule 11 inquiry, taking pains to insure that the defendant's submissions were knowing and voluntary. At the evidentiary hearing, Cray's own attorney stated:

> I am not in any way asserting that the court did not conduct a proper Rule 11 inquiry. That's not our issue, and I'll submit on that issue, because the inquiry is in full compliance with the Federal Rules and I'm not asserting that.

Furthermore, because Cray's claim that he pled under duress from Bridgeforth, if true, would not necessarily appear on the face on the plea colloquy, the district court properly

conducted an evidentiary hearing. After listening to the testimony of both defendants, the district court credited Bridgeforth's testimony and found Cray's assertions false. On appeal, Cray's claim comes down to a challenge to this credibility finding, but he offers no reason for us to tamper with it. *See United States v. Lloyd*, 868 F.2d 447, 451 (1989) (factual findings underlying conclusion defendant voluntarily consented to search upheld unless clearly erroneous).

We see no reason to tarry long over Cray's claim that he adequately asserted his innocence before the district court, for Cray's claim of innocence falls well short of presenting a legally cognizable defense to the charges to which he pled guilty. In fact, Cray's claim barely amounts to a denial of, let alone a defense to, those charges. Cray points to a conversation with his probation officer, which was reflected in his presentence investigation report as follows: "[Cray] advised that while he is guilty of some of the offense behavior, he is not guilty of all he is charged with." In response to questions from the court, Cray acknowledged that he had made this statement with reference to the original 11–count indictment, not to the two-count superseding information to which he ultimately pled guilty. Even if we take the statement as an assertion of his innocence of the charges to which he ultimately pled guilty, however, it comes up short. A defendant appealing the denial of his motion to withdraw a guilty plea, unlike a defendant who has not first pled guilty, must do more than make a general denial in order to put the Government to its proof; he must affirmatively advance an objectively reasonable argument that he is innocent, *see Barker*, 514 F.2d at 226 n. 17, for he has waived his right simply to try his luck before a jury. Cray's claim falls far short of what we require before finding that a district court that committed no error under Rule 11 nevertheless abused its discretion in denying the defendant's motion to withdraw his guilty plea.

We do not, therefore, reach Cray's arguments concerning the lack of prejudice to the Government. It is enough that the district court judge did not abuse its discretion in finding that Cray entered a knowing and

voluntary plea of guilty and that Cray failed to make out a legally cognizable defense to the charges against him.

### III.  Conclusion

The district court's denial of Cray's motion to withdraw his guilty plea, and Cray's resulting conviction, are in all respects

*Affirmed.*