Filed:  May 6, 1996

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 94-5872
(CR-93-494)

United States of America,

Plaintiff - Appellee,

versus

Eddie C. Wilson, Sr.,

Defendant - Appellant.

O R D E R

The Court amends its opinion filed April 22, 1996, as follows:

On page 2, second full paragraph, lines 2-3 -- the phrase "a detailed review of the facts are necessary" is corrected to read "a detailed review of the facts <u>is</u> necessary."

For the Court - By Direction

/s/ Bert M. Montague

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 94-5872

EDDIE C. WILSON, SR.,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Walter E. Black, Jr., Senior District Judge.
(CA-93-494)

Argued: February 2, 1996

Decided: April 22, 1996

Before NIEMEYER and LUTTIG, Circuit Judges, and DOUMAR,
United States District Judge for the Eastern District of Virginia,
sitting by designation.

_____

Affirmed by published opinion. Judge Doumar wrote the opinion, in
which Judge Niemeyer and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Beth Mina Farber, Branch Chief, Greenbelt, Maryland,
for Appellant. Maury S. Epner, Assistant United States Attorney,
Greenbelt, Maryland, for Appellee. **ON BRIEF:** James K. Bredar,
Federal Public Defender, Greenbelt, Maryland, for Appellant.
Lynne A. Battaglia, United States Attorney, Greenbelt, Maryland, for
Appellee.

**OPINION**

DOUMAR, District Judge:

This case presents the question of whether the trial court appropriately denied appellant's motion to withdraw his guilty plea, where the appellant claimed that he never possessed the requisite intent for the crime to which he pled guilty. For the reasons set out below, we AFFIRM the denial of appellant's motion to withdraw his guilty plea.

I.

Because appellant's claim challenges the adequacy of the Rule 11 proceeding before the district court, a detailed review of the facts is necessary. Defendant-Appellant Eddie C. Wilson, Sr. ("Wilson"), as the owner and operator of Big Eddie's Carryout and Food Market in Baltimore, was authorized to accept food stamps by the United States Department of Agriculture ("U.S.D.A.") by way of both paper food coupons as well as electronic benefits transfer ("E.B.T."). These E.B.T. transfers were encoded onto E.B.T. cards which were distributed to qualifying Maryland food stamp program recipients, who then utilized the card much like a debit card at appropriate food vendors such as Big Eddie's. The U.S.D.A. then reimbursed vendors by making electronic funds deposits directly into the vendor's bank accounts.

Wilson, along with his employee and co-appellant James "Phil" Murray, conducted numerous E.B.T. transactions in which they collected food stamps or E.B.T. benefits in exchange for cash at a rate of approximately sixty cents per dollar. Appellant made numerous cash withdrawals from his business accounts and wrote a number of checks payable to himself, Murray, and his then-girlfriend and co-defendant Karen Goldman. Some of these funds were converted into assets such as a motor vehicle and a diamond ring. Other proceeds were deposited into Goldman's personal account, and then withdrawn by Goldman at Wilson's direction.

Appellant was charged in all twenty-six counts of the indictment charging appellant, Murray and Goldman. Count One charged all three with conspiracy to launder proceeds of an unlawful activity with

2

the intent to promote the carrying on of said unlawful activity or knowing that the transactions were to conceal those proceeds, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (B)(i). Paragraph five of the "Manner and Means of the Conspiracy" stated that the conspirators "utilized Karen Goldman's account at Nations Bank to facilitate and conceal the EBT card and food stamp coupon trafficking." Paragraph six stated that certain other transactions "were conducted with the intent to facilitate the unlawful theft, embezzlement and conversion of government property, i.e. food stamp benefits, and to conceal and disguise the proceeds thereof." Counts Two through Eighteen charged conversion of government property in violation of 18 U.S.C. §§ 2 and 641, and Counts Nineteen through Twenty-Six charged money laundering in violation of 18 U.S.C. §§ 2, 641 and 1956(a)(1)(A)(i) and (B)(i). Wilson and his counsel subsequently entered into a plea agreement with the United States, dated March 18, 1994, whereby appellant agreed to plead guilty to Count One as well as to forfeiture of certain property. The parties then entered an agreed statement of facts, attached to the plea agreement and signed by both appellant and his counsel.**1**

The trial court held a colloquy pursuant to Fed. R. Crim. P. 11 with Wilson, his counsel, and the Assistant United States Attorney on April 4, 1994. Wilson responded affirmatively to the questions of the district court as to whether he read the indictment and understood the charges against him. Wilson was asked by the court deputy clerk to which count he was pleading guilty, and Wilson stated, "I don't know the number of the count, but the charge I believe is money laundering." J.A. 45. Appellant was informed by the Court that he "should not hesitate" to tell the judge if he did not understand any question and should feel free to consult with his attorney. Appellant acknowledged the Court's statement. Appellant then represented that he finished high school and attended college, had no competency problems, and was satisfied with the representation of his attorney. After appellant acknowledged the rights that he was forfeiting, the Court summarized Count One of the indictment in full as follows:

_____

**1** The agreed statement of facts in the Joint Appendix is unsigned. However, defense counsel has not objected to the fact that an identical copy was in fact signed, and the record indicates such signature. J.A. 64.

3

THE COURT: Now specifically count One of the indictment Mr. Wilson, charges that from about October, 1992 continuing thereafter until about July, 1993 in Maryland and elsewhere, that you, Karen Goldman and James Murray, a/k/a "Phil", together with others known and unknown to the Grand Jury, did unlawfully, willfully and knowingly conspire to knowingly and willfully conduct, and attempt to conduct financial transactions affecting interstate commerce, namely, the withdrawal of monetary instruments from Provident Bank and Maryland National Bank which involved the proceeds of a specified unlawful activity; that is theft, embezzlement and conversion of public property with the intent to promote the carrying on of said unlawful activity; and knowing that the transactions were designed in whole or in part, to conceal the nature, locations, source, ownership and control of the proceeds of the unlawful activity. And that while conducting, or attempting to conduct such financial transactions, knew that the property involved represented the proceeds of some form of unlawful activity.

That is a long-winded way of saying things, but do you understand exactly what you are charged with here?

THE DEFENDANT: Yes, sir.

THE COURT: The indictment in Count One then goes on to describe in some detail the method and means of the conspiracy, and then follows up with a list of overt acts that appear from paragraph 7 through paragraph 66 of the indictment.

Now, that as a whole, do you understand that is the charge to which you are pleading guilty?

THE DEFENDANT: Yes, sir.

J.A. 53-54. The Court then advised Wilson of the statutory maximum and of other matters incident to the plea of guilty, such as the possibility of a fine, supervised release, the special assessment, restitution, and the sentencing guidelines.

4

The Assistant United States Attorney (AUSA) then described the plea agreement in detail. The Court asked if the appellant understood the plea agreement and the appellant agreed. The Court then stated that Wilson would "not be allowed to withdraw the guilty plea [he was] offering [to the Court] unless there[were] exceptional circumstances," which Wilson understood. Wilson then proceeded to state, "I still wish to plead guilty to Count One." The Assistant United States Attorney then proceeded into a description of the facts as agreed by both parties in the "Agreed Statement of Facts" appended to the plea agreement. Relevant to this appeal, the agreed statement, read in open court, provided in part:

> Cash withdrawals and checks were . . . used to conceal and disguise the proceeds of the unlawful food stamp trafficking by removing them from bank accounts that had been disclosed to USDA and converting them to cash and assets that were more difficult to trace to the unlawful food stamp transactions.

> Wilson utilized Karen Goldman's account at Nations Bank to facilitate and conceal the EBT card and food stamp coupon trafficking. . . .

> . . . . Certain transactions in the Big Eddie's Carryout and Food Market accounts were conducted with the intent to facilitate the unlawful theft, embezzlement and conversion of government property, i.e., food stamp benefits, and to conceal and disguise the proceeds thereof.

J.A. 66-67.

The Court then immediately propounded the following question to the appellant: "Mr. Wilson, having heard what the government would be prepared to prove if there were a trial in these charges, do you still wish to plead guilty to Count One?" Wilson replied, "Yes, sir." The Court then accepted Wilson's plea, found that the plea "was made by the defendant freely and voluntarily; not out of ignorance, fear, inadvertence or coercion," and found that the plea had a basis in fact.

5

At the scheduled sentencing date, against the advice of counsel, appellant claimed that he was guilty of food stamp fraud "under Title 7" rather than money laundering, and that he should be prosecuted for the former rather than the latter. He stated that his concern was with the possibility of losing his right to appeal based on the money laundering charge if he in fact continued to plead guilty. Wilson further admitted to all the facts as alleged in the indictment. The Court and the parties agreed that the best course of conduct was to interpret appellant's objection as a motion to strike or withdraw his plea of guilty, and the Court set the matter for briefing and oral argument.

Appellant again stated his objection at the hearing on his motion to withdraw. Appellant argued that he was discriminated against by the prosecutor's choice of charging him with money laundering instead of with food stamp fraud. On direct examination by his counsel, appellant stated that "a major factor" of his concern was the potential sentence he could receive, being much greater under the laundering statute than under food stamp fraud. Appellant then stated that he did not think he was guilty of money laundering at the time of the Rule 11 Colloquy. When the Court asked him how he could go through the earlier proceeding with such a belief, he implied that he was "convinced" by his attorney. He then stated that he did not attempt to deceive the U.S.D.A. or hide the food stamp proceeds.[2] The AUSA also asked appellant whether he harbored this belief about the money laundering versus food stamp fraud prior to his guilty plea, and the appellant said he "had a concern about it." Appellant later stated that the prosecutor chose a statute with a harsher penalty because both the prosecutor and the appellant were black, and the prosecutor did not want to look like he was being lenient.

After argument by both counsel the Court ruled from the bench on appellant's motion. The Court stated that it compared the agreed statement of facts to the indictment and found that appellant would be

_____

[2] At this point in the hearing it was revealed that defendant was first arrested in 1992, was about to be charged with food stamp fraud, and entered into a plea agreement in reference to such a charge. The offer by the government was revoked before the plea was entered, however, when the defendant was found to have continued engaging in the prohibited conduct.

guilty of money laundering, particularly as to the intent element of that offense. The Court then rejected appellant's "reverse discrimination" claim, finding no basis for that claim either. Applying the six-factor test in United States v. Moore, 931 F.2d 245, 248 (4th Cir.), cert. denied, 502 U.S. 857 (1991), to appellant's motion to withdraw, the Court overruled the motion, stating the following:

> Here there is only an assertion of technical innocence, a lengthy delay before the motion to withdraw and competent assistance of counsel. While there is no great prejudice to the government it would be a waste of time for the Court to withdraw a guilty plea based on frivolous arguments. The only indication that the plea was not knowing and voluntary is defendant's assertion that he did not know, he would not be able to appeal the fact that he was indicted under Title 18 rather than Title 7. However, the preservation of a frivolous issue cannot affect the clear evidence and the defendant's rearraignment testimony that his guilty plea was, in fact, knowing and voluntary.
>
> The Court is satisfied that the re-arraignment was properly conducted and that on the basis of the transcript of that it is clear to the Court that indeed the guilty plea was knowing and voluntary and was proper for the Court to accept that plea. Accordingly because the government could properly charge the defendant under Title 18 because the Court finds that the defendant has always been aware that he was pleading guilty to a charge under Title 18, and because the defendant's plea was knowing and voluntary and because there was no discrimination by the Assistant United States Attorney the Court will deny Mr. Wilson's motion to withdraw the guilty plea . . . .

J.A. 145. The appellant was subsequently sentenced to forty-six months imprisonment.

II.

A refusal by the district court to allow a appellant to withdraw a guilty plea under Rule 32(e),**3** Fed. R. Crim. P., is reviewed on appeal for abuse of discretion. <u>Moore</u>, 931 F.2d at 248. Appellant makes essentially a two-pronged attack against the district court's denial of his motion to withdraw the guilty plea. Appellant's first asks this court to adopt the analysis of the District of Columbia Court of Appeals in <u>United States v. Cray</u>, 47 F.3d 1203 (D.C. Cir. 1995), where that court held that the validity of the Rule 11 proceeding was the most important inquiry in determining whether the defendant had a "fair and just reason" to withdraw a guilty plea. <u>Id.</u> at 1207.**4** Other factors identified by the D.C. Circuit include whether defendant has

_____

**3** Prior to December 1, 1994, the motion to withdraw the plea of guilty was located in Rule 32(d), Fed. R. Crim. P. As of December 1, 1994, however, Rule 32 was to be amended so that the same motion to withdraw the plea of guilty was located in Rule 32(e). Pub. L. No. 103-322, 108 Stat. 2078, § 230101(b), (c) (Sept. 13, 1994). The parties refer to the motion denied by the district court as a Rule 32(d) motion, which is appropriate given that the motion was made prior to December 1, 1994.

At the time of the instant motion in the district court, Fed. R. Crim P. Rule 32(d) provided:

> If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c), the court may permit withdrawal of the plea upon a showing by the defendant of <u>any fair and just reason</u>. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

<u>Id.</u> (emphasis added). The 1994 amendment simply moved the subsection to 32(e) and removed the phrase "imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c)." Pub. L. No. 103-322, 108 Stat. 2078, § 230101(b), (c) (Sept. 13, 1994). There has been no change in the law with respect to the instant motion.

**4** <u>Cray</u> identified as the source of the "fair and just reason" test for Rule 32(e) the Supreme Court decision of <u>Kercheval v. United States</u>, 274 U.S. 220, 224 (1927), which stated that a district court in its discretion may grant a motion to withdraw a guilty plea "if for any reason the granting of the privilege seems fair and just." <u>Id.</u>

8

made a credible claim of legal innocence, and whether the government has been prejudiced by the delay in proceeding to trial. Id.

To support the adoption of Cray in this Circuit, appellant cites United States v. Lambey, 974 F.2d 1389 (4th Cir. 1992), cert. denied, 115 S. Ct. 672 (1994), which, in reviewing the Advisory Notes to the 1983 amendment to Rule 32, identifies the fairness of the Rule 11 proceeding as most important. Id. at 1394. We also stated in Lambey that a "fair and just reason" is either essentially a challenge to the validity of the Rule 11 proceeding or a challenge to the "fulfillment of a promise or condition emanating from the proceeding." Id. at 1393-94. Lambey did not address the test laid out in Moore two years earlier. Thus appellant argues that Cray and Lambey, rather than Moore, should control.

Alternatively, appellant claims that under the test currently used by this Circuit as set forth in Moore, 931 F.2d at 248, appellant should have been allowed to withdraw his plea of guilty. The six-factor analysis in Moore requires the trial court to weigh the following: (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary; (2) whether defendant has credibly asserted his legal innocence; (3) whether there has been a delay between the entering of the plea and the filing of the motion; (4) whether the defendant has had close assistance of competent counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether it will inconvenience the court and waste judicial resources. Id. At oral argument, the government also urged the adoption of the Cray analysis, rather than the six-factor test from Moore. We therefore address this issue.

It is this Court's view that the Cray analysis appears to be nearly identical to our test laid out in Moore. Cray places a strong reliance on the validity of the Rule 11 proceedings, as does Moore. Cray also appears to combine the "delay" and "prejudice to the government" factors of Moore into a single factor, "whether the government would be prejudiced by the delay in going to trial." Cray, 47 F.3d at 1207. The third factor in Cray, a credible assertion of legal innocence, appears in both tests. The only difference between the two approaches, then, is that Cray does not directly address the "waste of judicial resources" and "competency of counsel" factors which are

9

both present in <u>Moore</u>. Yet, competency of counsel certainly is a strong component of a properly-conducted Rule 11 hearing, and thus could fairly be viewed as part of the <u>Cray</u> analysis. Thus the only significant difference would be that <u>Cray</u> would not require a Court to consider the preservation of judicial resources.

Neither party has claimed that the waste of judicial resources is irrelevant to a motion under Rule 32(e). In fact, the avoidance of such a waste has been identified as one of the primary purposes of permitting guilty pleas in lieu of trial. <u>See</u>, <u>e.g.</u>, Fed. R. Crim. P. 32, Advisory Committee's Notes to 1983 Amendments (stating that the procedure allowing conditional pleas of guilty would "conserve prosecutorial and judicial resources"); <u>McCarthy v. United States</u>, 394 U.S. 459, 472 (1969). We therefore find that considerations of judicial economy play a strong part in the withdrawal of a guilty plea.

This Court has recently applied the six-factor analysis of <u>Moore</u> in <u>United States v. Puckett</u>, 61 F.3d 1092, 1099 (4th Cir. 1995), stating that the fairness of the Rule 11 proceeding is the key factor in the review of the denial of a motion to withdraw a guilty plea, and that an appropriately conducted Rule 11 proceeding raises a strong presumption that the plea is final and binding. <u>Id.</u> (quoting <u>Lambey</u>, 974 F.2d at 1394). In <u>Puckett</u>, we recognized the essential nature of a Rule 11 proceeding, citing <u>Lambey</u>, but continued to apply our six-factor test. We address the issue again to reemphasize our commitment to <u>Moore</u>, in light of both parties' argument to adopt the <u>Cray</u> test. Given the similarities between <u>Moore</u> and <u>Cray</u>, and the undeniable relevance of the concern over the waste of judicial resources, the Court sees no reason to alter its formulation, and thus we proceed to apply the <u>Moore</u> analysis.

III.

The key to a 32(e) motion is whether or not the Rule 11 proceeding was properly conducted. <u>E.g.</u>, <u>Puckett</u>, 61 F.2d at 1099. We first note the deference that trial courts are afforded in a review of a Rule 11 proceeding. We have previously stated that the "manner of ensuring that the defendant is properly informed is committed to the good judgment of the district court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophisti-

10

cation and intelligence." <u>United States v. Reckmeyer</u>, 786 F.2d 1216, 1221 (4th Cir.) <u>cert. denied</u>, 479 U.S. 850 (1986). Now we turn to the specific requirements of Rule 11.

In <u>McCarthy</u>, the Supreme Court held that a plea cannot be deemed voluntary unless the defendant understands the law in relation to the facts of his case, and therefore Rule 11 requires that the trial court not only inquire as to the defendant's understanding as to the nature of the charge and consequences of his plea, but also the trial court must "satisfy himself that there is a factual basis for the plea." 394 U.S. at 467. Thus the trial court's failure to speak directly to the defendant to determine the defendant's understanding was reversible error. <u>Id.</u> at 464-67. There was no such error here.

Appellant's primary claim is that the trial court was required to state the essential elements of each of the statutes under which he was being charged (i.e., conspiracy, theft of government property and money laundering), based on the complexity of those statutes in combination. The government argues that in <u>United States v. DeFusco</u>, 949 F.2d 114 (4th Cir. 1991), <u>cert. denied</u>, 503 U.S. 997 (1992), this Court rejected the claim that the elements of the charge must be explained. Indeed, we stated that, "[i]n reviewing the adequacy of compliance with Rule 11, this Court should afford deference to the trial court's decision as to how best to conduct the mandated colloquy with the defendant." <u>Id.</u> at 116.

We also stated in <u>DeFusco</u> that "the defendant must receive notice of the true nature of the charge rather than a rote recitation of the elements of the offense . . . [and the plea may be] made on the basis of detailed information received on occasions before the plea hearing." <u>Id.</u> at 117 (citations omitted). Though in <u>DeFusco</u> defendant stated that "he had reviewed the elements of each offense with his attorney along with any potential defenses," <u>id.</u>, it would be rather disingenuous of this court to say on the one hand that we will leave the construction of the Rule 11 proceeding to the discretion of the trial court, and on the other hand require a "rote recitation" of the essential elements of the charges against a defendant.

The Court has repeatedly refused to script the Rule 11 colloquy, relying rather on the experience and wisdom of the district judges

11

below. Only in rare situations has the Court mandated particular statements or procedures. See, e.g., United States v. Goins, 51 F.3d 400, 402-03 (4th Cir. 1995) (reversing a guilty plea based on the trial court's failure to address a mandatory minimum sentence, but only if defendant actually did not know of the mandatory minimum). We again refuse to require the district courts to recite the elements of the offense in every circumstance. In many cases, such a procedure would be a formality and a needless repetition of the indictment, which often tracks the essential elements of the offense. Moreover, we have under similar circumstances questioned the need for formalities:

> [Rule 11] is now at such a level of complexity as to render letter-perfect compliance with each of its many provisions very difficult indeed. One who has pled guilty and done so voluntarily, understandingly, and with knowledge of the consequences of his plea . . . has evinced a desire to waive technicalities, to come to terms with the legal system, and to admit his fault. There is something foreign to the spirit of this act, almost invariably done today on the advice of counsel, in a rule that encourages following it by an appeal grounded in a mincing insistence on the punctilios of Rule 11.

Reckmeyer, 786 F.2d at 1221 (quoting United States v. Dayton, 604 F.2d 931, 939-40 (5th Cir. 1979), cert. denied, 445 U.S. 904 (1980)). That statement has since lost none of its force. We therefore decline to require across-the-board the recitation of the essential elements of the charged offense at a Rule 11 hearing. As we have stated previously, the district courts are wholly capable of guaranteeing that guilty pleas are knowing and voluntary without flyspecking on the appellate level.

IV.

Other similarities between DeFusco and the instant case similarly support our holding that the trial court was not in error in refusing to allow appellant to withdraw his guilty plea. The defendant in DeFusco was charged with money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) in relation to a conspiracy to hide assets from a bankruptcy trustee. 949 F.2d at 116. After sentencing, defen-

12

dant appealed his conviction on the ground that in his Rule 11 pro-
ceeding the Court failed to establish whether the plea was knowing
and voluntary, particularly with respect to the nature of the charges.
Id. Thus DeFusco was a direct review of a guilty plea hearing after
sentencing. On direct review, we applied the harmless error standard
and exhibited considerable deference to the trial court, id. at 116-17,
and similarly, in reviews of Rule 32(e) denials by the trial court, we
have exhibited equivalent deference. Puckett, 61 F.3d at 1099.

The defendant in DeFusco provided the court with a signed state-
ment of facts which he admitted were accurate. There"[t]he statement
of facts, as well as the plea agreement, set[ ] forth each element of the
offense and the facts to support each," yet defendant argued that he
never admitted to having the requisite criminal intent for money laun-
dering. Id. at 120. In response we stated that the judge in the colloquy
need not personally establish the factual basis, and cited an Eleventh
Circuit case, United States v. Pinto, 838 F.2d 1566, 1569 (11th Cir.
1988), noting that Pinto held that the trial court had discretion to deny
a motion to withdraw a plea where the facts in the indictment were
precise enough to satisfy the judge of the factual basis for defendant's
guilty plea. Id. Thus the stipulated recitation of facts alone was suffi-
cient to support a plea to a money laundering charge. Id. (citing
United States v. Guichard, 779 F.2d 1139, 1146 (5th Cir.), cert.
denied, 475 U.S. 1127 (1986)).

In this case appellant stipulated to a lengthy and detailed set of
facts. The trial court satisfied itself as to the factual basis for the plea,
and assured itself that appellant understood the indictment against
him. The court considered the education, intelligence and sophistica-
tion of the appellant, and determined that his plea was knowing and
voluntary. Appellant's later claim that he did not have the requisite
intent for money laundering is not sufficient to set aside the plea. As
we have stated previously, "[s]tatements of fact by a defendant in
Rule 11 proceedings may not ordinarily be repudiated, and, similarly,
findings by a sentencing court in accepting a plea`constitute a formi-
dable barrier' to attacking the plea." Lambey, 974 F.2d at 1395 (quot-
ing Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)). We find no
error in the district court's determination that appellant's plea was
knowingly and voluntarily made.

13

As to the other factors under Moore, we find no error in the trial court's finding that the propriety of the Rule 11 proceeding, combined with the delay between the plea and the motion to withdraw, appellant's competent assistance of counsel, and the potential for a significant waste of judicial resources in reopening the matter, necessitated the denial of the motion to withdraw the guilty plea.

V.

Appellant argues that he never possessed the intent to conceal the proceeds of the food stamp scheme.**5** The question that really matters, however, and the one that appears to have escaped so many courts in the pursuit of pure procedural perfection, is whether appellant believed, at the time of the taking of his plea, that there was a substantial risk that a jury could find that he possessed the requisite intent. A defendant, in pleading guilty, does not have to believe that he committed all of the acts and possessed the statutorily-prescribed intent for the crime charged. The purpose of the plea hearing is to guarantee that the defendant understands the nature of the charges against him so that he can knowingly and voluntarily agree to plead guilty, rather than face the risk of a reasonable jury finding that he possessed the necessary "mens rea" and committed the "actus reus." In North Carolina v. Alford, 400 U.S. 25 (1970), the Supreme Court stated the following:

_____

**5** The trial court characterized appellant's claim that he did not possess the requisite intent as a "technical claim of innocence." Whether this was in fact a proper characterization is of no import to our decision, as appellant admittedly held his concern prior to the initial Rule 11 hearing. His failure to raise his concern at that time, then, might fairly be considered a waiver of the opportunity to raise it later.

Moreover, even if properly before the court, this claim is without merit based on the text of the statute itself. A conviction for money laundering requires either "the intent to promote the carrying on of specified unlawful activity . . . or knowing that the transaction is designed in whole or in part . . . to conceal . . . the control of the proceeds of specified unlawful activity . . . ." 18 U.S.C. § 1956(a)(1) (emphasis added). Thus appellant's argument that he did not intend to conceal the proceeds of his food stamp fraud, even if true, would be insufficient to prevent conviction, since he does not contest that he intended to promote the carrying on of his fraud by way of the money transfers.

14

> [W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandably consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

> Nor can we perceive any material difference between a plea which refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interest requires entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.

Id. at 37 (implying that a district court must satisfy itself of the factual basis for the plea rather than rely on defendant's protestations of innocence).

Appellant's claim that he never intended to conceal the proceeds of the food stamp scheme, therefore, warrants no remedy, even if this issue had been raised at the time of his plea, and even if his argument on the intent necessary for conviction were valid. It is clear from the plea hearing, as well as the subsequent hearing on the motion to withdraw, that appellant understood the risk of presenting the case to a jury. Rather than facing this risk, appellant chose to plead guilty to a single offense. His later claims exhibited no more than cold feet brought about by the realization that the guideline application in his pre-sentence report required immediate and significant incarceration. This is not a basis for withdrawal of a plea of guilty. Whether appellant made a knowing and voluntary plea of guilty is a question which the trial judge must determine at the time that the plea is taken. The question of whether to allow withdrawal of such a plea is addressed to the discretion of the trial court. Here there has been no showing of abuse of discretion. The district court is therefore

AFFIRMED.

15