**UNITED STATES of America, Appellee**

v.

**Rasheed Adeshina IDOWU, Appellant.**

**No. 96–3014.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 21, 1997.

Decided Feb. 7, 1997.

Carmen D. Hernandez, Assistant Federal Public Defender, Washington, DC, argued the cause for appellant. With her on the briefs was A.J. Kramer, Federal Public Defender, Washington, DC. Frances H. Pratt, Assistant Federal Public Defender, Alexandria, VA, entered an appearance.

Christine E. Sykes, Assistant U.S. Attorney, Washington, DC, argued the cause for appellee. With her on the brief were Eric H. Holder, Jr., U.S. Attorney, John R. Fisher and Thomas C. Black, Assistant U.S. Attorneys, Washington, DC.

Before: SILBERMAN, SENTELLE, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

Dissenting opinion filed by Circuit Judge SENTELLE.

RANDOLPH, Circuit Judge:

This is an unusual case. The defendant Idowu, an alien, pled guilty to something that may not be a crime—being in the United States without the Attorney General's permission more than five years after his deportation. Prior to sentencing, Idowu asked if he could take back his plea. The judge said no and pronounced sentence. This appeal followed.

The record is understandably sparse. We know that Idowu was deported on October 15, 1985, because of his conviction for mail fraud in Minnesota. More than five years later, he arrived at John F. Kennedy International Airport in New York. He must have presented his Nigerian passport to the immigration authorities there. The passport bears the stamp "U.S. Immigration" and the date of his entry. Idowu left the United States once more and returned in 1992, again through Kennedy Airport. His passport reflects that "U.S. Immigration" admitted him. In March 1995, after another trip abroad, Idowu arrived again at Kennedy Airport. This time, according to Idowu, immigration officers told him that his name appeared on a computerized "lookout" system listing those who may be ineligible for entry. He was admitted anyway.

A few days after his 1995 arrival, Idowu wrote to officials at the United States Department of State in Washington, D.C., asking to have his name removed from the "lookout" data base. He says he did this at the suggestion of the immigration officials in New York. A State Department official wrote back, inviting Idowu to a meeting at the Department. Idowu showed up, and an

agent of the Immigration and Naturalization Service arrested him.

Idowu entered a plea of guilty to violating 8 U.S.C. § 1326(a) and (b)(1). Section 1326(a) states:

(a) Subject to subsection (b) of this section, any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's applying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under title 18, or imprisoned not more than 2 years, or both.

Subsection (b)(1) states that if the deportation was after the alien's conviction of a felony or three or more misdemeanors of a certain character, the alien may be imprisoned up to ten years.

Application of § 1326 appears straightforward. Idowu had been convicted of mail fraud and deported. He was later found in the United States. He did not obtain the Attorney General's express consent to apply for admission. If one looked no further, it would be easy to see why the district court thought Idowu had no defense and refused to allow him to withdraw his plea.

Complications begin when we consider 8 U.S.C. § 1182(a), brought to our attention by Idowu's present counsel, but never mentioned to the district court by his former attorney. This section lists "classes of excludable aliens who are ineligible to receive visas and who shall be excluded from admission to the United States." One of those alien classes fits Idowu to a tee. Section 1182(a)(6)(B) deals with aliens who have been "arrested and deported." Any such alien,

who seeks admission within 5 years of the date of such deportation or removal ... is

excludable, unless before the date of the alien's embarkation or reembarkation at a place outside the United States or attempt to be admitted from foreign contiguous territory the Attorney General has consented to the alien's applying or reapplying for admission.

8 U.S.C. § 1182(a)(6)(B).

Idowu does not appear to have reentered the United States until more than five years after his deportation. Section 1182(a)(6)(B), by excluding deported aliens for five years unless the Attorney General consents to their applying for admission, suggests that after five years the alien no longer needs consent. Idowu's counsel quoted an INS form (I–294) to the district court that creates the same impression; the form, given to deportees, supposedly stated "by law (Title 8, U.S.C. 1326) any deported person, who within five years returns without permission is guilty of a Felony." Another version of this form (I–294) may be in use now; a different version was handed to Idowu when he departed in 1985. But a current INS regulation offers the same advice as the form defense counsel quoted. The regulation states:

Any alien who has been deported or removed from the United States is inadmissible to the United States unless the alien has remained outside the United States for five consecutive years since the date of deportation or removal.... Any alien who does not present satisfactory proof of absence from the United States for more than five consecutive years ... to the consular or immigration officer, and any alien who is seeking to enter the United States prior to the completion of the requisite five-[year] absence, must apply for permission to reapply for admission to the United States as provided under this part.

8 C.F.R. § 212.2(a) (1996). Idowu seemed aware of this five-year rule when he told the district court: "As soon as some of my friends deported, usually they come back after five years, so that's what I rely on before I come back.... I have a son going to the University of Minnesota, and I have a daughter [in Nigeria]. So and—a year, that's one of the reason why I was going on and off, you know, going home in December. I was

working all the time I was here. So I was going on and off, so that I can take care of my children because their mother already dead. So I don't even have the intention to get permission. I thought that after five years you don't need it, because I seen a lot of them—some of my friends that came back after five years. And I have some cases. So that's why I came back."

The government tells us that § 1182(a)(6)(B) does not affect the criminal provision because it is merely "a civil statute governing the issuance of visas by U.S. officials...." Brief for the United States at 20. Maybe, the government continues, Idowu would have had a defense if he had obtained a visa after five years pursuant to § 1182(a)(6)(B). Two courts of appeals have said as much.[1] But Idowu never obtained a visa.

The government's position seems to contradict the INS regulation just mentioned. To gain legal entry into the United States, not all aliens need a visa. The regulation therefore treats § 1182(a)(6)(B)'s five-year wait as applicable not only to aliens entering with visas, but also to other aliens: "Any alien who has been deported or removed from the United States and is applying for a visa, admission to the United States, or adjustment of status," must prove that he has remained outside the country for five years after deportation. 8 C.F.R. § 212.2(a).

█ Aliens who need a visa apply to officers of the State Department, normally in consular offices abroad. The Immigration and Naturalization Service—part of the Department of Justice—subjects the alien holding the visa to another check at the border. There are two categories of visas (and many subcategories). Nonimmigrant visas are usually issued for short visits, as in the case of tourists and students. Immigrant visas are for "permanent residence, which often leads to citizenship." CHARLES GORDON,

STANLEY MAILMAN & STEPHEN YALE-LOEHR, IMMIGRATION LAW AND PROCEDURE § 8.04[1] (1996). Applications for nonimmigrant and immigrant visas are subjected to computer checks. Those seeking an immigrant visa must produce police certificates from abroad and are put through FBI and security clearances. *Id.*

█ In the category of aliens who do not need a visa are those who have already been admitted as permanent residents. They may gain entry by presenting a valid alien registration receipt card (a "green card"), reentry permit, or equivalent documentation. *Id.* § 8.04[3]. Also, under a program initiated pursuant to the Immigration Reform and Control Act of 1986, nationals of twenty-four countries may enter as visitors without a visa if they meet certain requirements. *Id.*[2]

█ Idowu had a Nigerian passport, and Nigeria is not one of the countries designated in the visa waiver program. Why then did the immigration officials at Kennedy Airport let him in? Idowu says he presented a "resident alien card," issued to him on December 16, 1974, when he was admitted to permanent residence. That, plus his passport indicating that he had stayed out of the United States for more than five years, may have been all he needed. Perhaps Idowu's "resident alien card" was no longer valid when he reentered, perhaps he should have surrendered it when he was deported, or perhaps he presented other invalid documentation. At this point we cannot see how any of this would matter. The charge against Idowu was not that he presented false or invalid documents. His alleged crime was being here without the Attorney General's consent—consent § 1182(a)(6)(B) and an INS form and an INS regulation suggest he did not need after five years.

At the very least, § 1182(a)(6)(B) gave Idowu what potentially could be a complete de-

---

1. *United States v. Joya–Martinez*, 947 F.2d 1141 (4th Cir.1991); *United States v. Bernal–Gallegos*, 726 F.2d 187 (5th Cir.1984).

2. The countries are the United Kingdom, Japan, France, Switzerland, Germany, Sweden, Italy, the Netherlands, Andorra, Austria, Belgium, Denmark, Finland, Iceland, Liechtenstein, Lux-

embourg, Monaco, New Zealand, Norway, San Marino, Spain, Brunei, Argentina, and Australia. 8 C.F.R. § 217.5(a); 22 C.F.R. § 41.2(*l*); 61 Fed.Reg. 35,598 (July 8, 1996); 61 Fed.Reg. 39,-271 (July 29, 1996) (to be codified at 8 C.F.R. pt. 217).

fense to the § 1326 charge. It is true that he did not cite the five-year statute to the district court, but we think he did enough to raise the defense. He told the court that he thought the five-year lapse between his deportation and reentry relieved him of the need for the Attorney General's permission. Whether Idowu is correct poses an interpretative question we need not finally resolve. The record is too thin and the INS may have more to offer on the subject. At this stage it is enough to say that Idowu presented a "fair and just reason" to allow him to withdraw his plea. FED.R.CRIM.P. 32(e). *See United States v. Cray,* 47 F.3d 1203, 1206–07 (D.C.Cir.1995). Confusion about the effect of the five-year rule on § 1326(a) provided a substantial reason for Idowu's initial plea of guilty and his later motion to retract it. Since the government would not be prejudiced by the delay in having to go to trial, if it turns out that § 1182(a)(6)(B) does not give Idowu a defense, the district court's order denying Idowu's motion to withdraw his guilty plea is reversed and the case is remanded for further proceedings.

*So Ordered.*

SENTELLE, Circuit Judge, dissenting:

The majority's otherwise fine opinion is lacking in one important regard: it fails to identify any error on the part of the district court. This court reviews denials of motions to withdraw guilty pleas for abuse of discretion. *United States v. Cray,* 47 F.3d 1203, 1206 (D.C.Cir.1995) ("we have long held that a district court's [denial of a motion to withdraw a guilty plea] should be reversed only for an abuse of discretion"). The majority never suggests that the district court abused its discretion in denying this plea. It justifies the reversal by writing, "[a]t this stage it is enough to say that Idowu presented a 'fair and just reason' to allow him to withdraw his plea." *Maj. Op.* at 732. But this is not enough. Rule 32(e) provides that a district court "*may* permit [a] plea to be withdrawn if the defendant shows any fair and just reason." FED.R.CRIM.P. 32(e) (emphasis added). It does not provide that the district court *must* permit a plea to be withdrawn. Just because the district court could have

allowed Idowu to withdraw his plea does not mean that it was an abuse of discretion to decline to do so. *Cf. American Message Ctrs. v. FCC,* 50 F.3d 35, 41 (D.C.Cir.1995) ("While the Commission certainly could have chosen to allow AMC discovery into Sprint's billing practices in cases of toll fraud, it did not abuse its discretion by denying AMC's motion to compel."); *Monroe v. United States,* 234 F.2d 49, 55 (D.C.Cir.) ("The recordings were evidentiary, and therefore ... the trial court in its discretion could have required pre-trial production. However, the court did not abuse its discretion in denying appellant's requests ....") (citations omitted), *cert. denied,* 352 U.S. 872, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956).

In deciding whether the district court abused its discretion in denying a motion to withdraw a guilty plea, "the key to th[e] inquiry is whether the plea was entered in accordance with Rule 11." *Cray,* 47 F.3d at 1206. Rule 11 provides a protocol "designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *United States v. Dewalt,* 92 F.3d 1209, 1211 (D.C.Cir.1996) (internal quotations omitted). The majority never suggests that the district court violated Rule 11 in accepting the original guilty plea. The only possible problem with the Rule 11 proceeding is that the district court did not give adequate weight to the existence of a defense based on § 1182. There are two reasons why this is not an adequate ground to reverse the district court under an abuse of discretion standard.

First, I am not convinced that the late-proffered defense is a real one. It is axiomatic that "where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Entrs., Inc.,* 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (internal quotations omitted); *see also Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-

making body which passed it, the sole function of the courts is to enforce it according to its terms."). The language of the statute in this instance could hardly be more clear. Section 1326 contains no time limit on its effectiveness. That should end our analysis. Courts have no authority to create a time limit that Congress has not imposed.

Second, and more importantly, holding that the district court violated Rule 11 by not explaining a possible defense confuses the roles of the judge and the defense lawyer. A judge in a Rule 11 proceeding is required to ensure that the defendant understands the "nature of the charge, its substance." *United States v. Liboro*, 10 F.3d 861, 865 (D.C.Cir.1993) (internal quotations omitted). This Judge Lamberth did. Rule 11 does not require the judge to explore potential defenses. It certainly does not require the judge to create defenses that are never even suggested to him. The § 1182–based defense to this charge was never explicitly raised until this appeal. It is possible that Idowu had a constitutional right to an attorney who would make this argument. Remedy for a violation of this right, however, is properly sought in a petition for ineffective assistance of counsel brought under 28 U.S.C. § 2255.

Because I believe that the district court committed no error in denying the appellant's motion to withdraw his guilty plea, I respectfully dissent.