UNITED STATES of America,

v.

Gregory CURRY, Defendant.

No. CR.03–305(ESH).

United States District Court,
District of Columbia.

Oct. 20, 2004.

21. An Order consistent with the Court's ruling was issued on September 30, 2004.

David Walker Bos, Federal Public Defender for D.C., Washington, DC, Paul D.

Hunt, Rockville, MD, Rudolph Acree, Washington, DC, for Defendant.

Kenneth F. Whitted, Margaret J. Chriss, Washington, DC, for Plaintiff.

## *MEMORANDUM OPINION AND ORDER*

HUVELLE, District Judge.

Having pled guilty on January 27, 2004, to one count of conspiracy to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 846, defendant has now filed pre-sentence a motion to withdraw his plea. Having reviewed the pleadings and the record of the plea proceedings, the Court rejects defendant's argument that there was error in these proceedings or that his counsel provided ineffective assistance of counsel in recommending that he enter a plea of guilty. The Court therefore denies defendant's motion and will proceed to sentencing on November 3, 2004.

### BACKGROUND

Defendant was originally charged on July 17, 2003, with an eleven-count indictment. The indictment included charges of a drug conspiracy; possession with intent to distribute and distribution of crack cocaine; unlawful manufacture, transfer, or possession of a semi-automatic assault weapon; four counts of unlawful possession of a firearm and ammunition by a person previously convicted of a felony; and two counts of maintaining a residence for the purpose of manufacturing, distributing and using a controlled substance. Because the government filed enhancement papers pursuant to 21 U.S.C. § 851, defendant was subject to a mandatory minimum sentence of 240 months if convicted at trial. Defendant was represented by Rudolph Acree and Tony Shaw prior to and at the time of the plea.

On January 26, 2004, the Court conducted a motions hearing at which time FBI Agent Brian Wilhite gave testimony regarding defendant's involvement in a drug sale to a confidential informant on June 16, 2003. According to the agent, the informant met co-defendant Ann Arrington at her residence and instructed her to advise Curry to bring 31 grams of crack. Curry arrived in a Dodge Neon, and when the informant told Arrington that he wanted to keep his money until Curry had the crack with him, Arrington went out to talk to Curry, who in turn returned to an apartment at 5909 Clay Street, S.E.[1] After going into this apartment building, he returned to his car, and at that point, he was arrested. A search incident to the arrest revealed 43.3 grams of crack under the passenger's seat and $4,190 in cash on defendant's person. A search conducted pursuant to a search warrant at the Clay Street apartment produced five firearms; ammunition; additional cocaine, as well as heroin; and drug paraphernalia. Defendant's clothes were found in the apartment, as well as documents bearing his name. Finally, Verizon phone records listed the telephone number for the 5909 Clay Street second-floor apartment in defendant's name.

During the course of the motions hearing, the issue of a possible plea was addressed. The Court had the government put the plea offer on the record (*see* 1/26/04 Tr. at 24), and there was a discussion of the consequences to the defendant of going to trial versus entering a plea. (*Id.* at 24–26, 79–82.) Based on this discussion, defendant was informed that if convicted at trial, he faced a mandatory minimum of 240 months, whereas a plea would involve a ten-year mandatory minimum and an estimated Guideline range of

121 to 151 (assuming a three-point reduction for acceptance of responsibility). The defendant was instructed to consider his alternatives over the nighttime recess. (*Id.* at 80–81, 127.)

The next day (January 27, 2004), trial was scheduled to begin at 9:00 a.m. Instead of proceeding with trial, defendant chose to enter into a written plea agreement with the government to one count of drug conspiracy involving 50 grams or more of cocaine base in violation of 21 U.S.C. § 846. In exchange for his plea, the government withdrew its previously-filed enhancement papers. Thereafter, the Court conducted a lengthy plea colloquy, defendant admitted his guilt under oath on the record and by signing the government's Proffer of Evidence, and he then entered a plea to the one count of conspiracy. Throughout the proceeding, defendant was informed that even if the Guideline range were to be below 120 months, he would have to serve a ten-year mandatory minimum. (*See, e.g.,* 1/27/04 Tr. at 15–16.)

Three months later—on the sentencing date (April 29, 2004)—defendant raised concerns regarding his willingness to be represented by Messrs. Acree and Shaw. He thereafter had the opportunity to have new counsel appointed, but he chose to retain Paul Hunt. Defendant filed a motion to withdraw his guilty plea on June 18, 2004, and this motion was amended on August 6, 2004. In this motion defendant seeks to withdraw his plea, claiming that his counsel was ineffective in advising him to enter a guilty plea and that his plea was not voluntary and intelligent because the plea was rushed and confusing because of a change in one sentence of the written plea agreement. As explained more fully below, neither of these arguments is meri-

---

1. The FBI had previously videotaped Curry's entry and exit from this apartment building, including his going to the second floor of the building.

torious, and therefore, defendant's motion to withdraw his plea will be denied.

## ANALYSIS

### I. Standard for Plea Withdrawal

 Under Rule 32(e), a court may permit withdrawal of a guilty plea prior to sentencing for any "fair and just", reason. *See United States v. Barker,* 514 F.2d 208, 219 (D.C.Cir.1975). Withdrawal is to be liberally granted, but it is not a matter of right. *United States v. Ford,* 993 F.2d 249, 251 (D.C.Cir.1993). Three factors are important in assessing whether a trial court should deny a motion to withdraw a guilty plea:

> First, a defendant generally must make out a legally cognizable defense to the charge against him. Second, and most important, the defendant must show either an error in the taking of his plea or some "more substantial" reason he failed to press his case rather than plead guilty. Finally, if those two factors warrant, the court may then inquire whether the Government would have been substantially prejudiced by the delay in going to trial.

*United States v. Cray,* 47 F.3d 1203, 1207 (D.C.Cir.1995). A defendant cannot satisfy the need to show legal innocence by a mere general denial, but "he must affirmatively advance an objectively reasonable argument that he is innocent." *Id.* at 1209. Furthermore, "[i]f the movant's factual contentions, when accepted as true, make out no legally cognizable defense to the charges, he has not effectively denied his culpability, and his withdrawal motion need not be granted." *Barker,* 514 F.2d at 220.

 To highlight its emphasis on the second factor, the Court noted that "a defendant who fails to show some error under Rule 11 has to shoulder an extreme-

ly heavy burden if he is ultimately to prevail." *Cray,* 47 F.3d at 1208. It observed, "we have never held that a district court abused its discretion in denying a motion to withdraw a guilty plea where the defendant failed to show some defect in the taking of his plea under Rule 11." *Id.* at 1207. If the plea colloquy was not conducted in "substantial compliance" with Rule 11, the defendant should "almost always" be permitted to withdraw the plea. *United States v. Ford,* 993 F.2d at 251 (quoting *United States v. Abreu,* 964 F.2d 16, 18 (D.C.Cir.1992) (internal quotation marks omitted)). Where the defect in the plea is not one that would appear on the record, an evidentiary hearing may be appropriate. *Cray,* 47 F.3d at 1208–09.

Applying these factors to the instant motion, it is clear that there was no defect in the plea, defendant fails to make out a claim for ineffectiveness of counsel, and he has not made out a legally cognizable defense. Also, given the nature of his claims, no evidentiary hearing is necessary.

### II. Curry's Plea

 Defendant provides no basis for finding that his plea of guilty failed to comport with Fed.R.Crim.P. 11. As is clear from the transcript, this Court complied with the rule's requirements to ensure that the plea was entered voluntarily and intelligently. At the time of his plea, defendant was forty-five years old, he had completed a year-and-a-half of college, and throughout the proceedings, he demonstrated absolutely no confusion or difficulty in understanding the Court's questions or the plea agreement. (1/27/04 Tr. at 5–6.) The Court assured itself that defendant understood the nature of the charge and the maximum penalties involved, that he was knowingly and voluntarily waiving his constitutional rights, and that his plea was not the product of coercion. Defen-

dant indicated that he was satisfied with the representation provided by counsel, he had had enough time to talk to counsel about his case and his decision to plead guilty, and he had gone over the plea agreement with counsel and counsel had answered his questions. (1/27/04 Tr. at 6–7.) Defendant further indicated that he read and understood the plea agreement (*id.* at 8), and after being given the chance to correct any mistakes in the factual proffer (*id.* at 9–12) or to ask questions (*id.* at 25), defendant pled guilty to one count of drug conspiracy. (*Id.* at 25.)

In particular, defendant agreed to the quantity of drugs that constituted relevant conduct both on the record (*id.* at 12, 20) and by signing the government's Proffer of Evidence. Based on the quantity of drugs involved, defendant was informed that his Guideline range would be either 121 to 151 months, assuming the government proved the possession of firearms as relevant conduct and the defendant received a three-point reduction for acceptance of responsibility,[2] or if the government failed to persuade the Court that defendant had been in possession of the firearms found in the Clay Street apartment, the Guideline range would be 97 to 121 months (again assuming a three-point reduction for acceptance of responsibility). (*Id.* at 14–19.) Defendant was, however, clearly informed on both January 26 and 27 that no matter what Guideline range applied, his sentence could not be below the ten-year mandatory minimum.[3] (*Id.*)

Defendant appears not to contest that the Court complied with the requirements of Rule 11. *See In re Sealed Case*, 283 F.3d 349 (D.C.Cir.2002). Rather, defendant argues that he was rushed and confused by the deletion of one sentence in ¶ 12 of the plea agreement. These arguments are belied by the record. Defendants began considering the plea offer at least one day prior to entering his plea. (*See* 1/26/04 Tr. at 23–24, 79–82.) Further, the defendant stated under oath during the plea colloquy that he had had enough time to discuss his decision to plea guilty and to go over the plea agreement with counsel. (1/27/04 Tr. at 7.) He further indicated that he understood the plea agreement and had no questions about it. (*Id.* at 7–8, 25.) The record is also clear that the deletion of the sentence relating to a three-point reduction for a mitigating role did not cause any confusion or detriment to the defendant. No one ever promised defendant such a reduction, nor does he make such an allegation, and the purpose for striking the sentence because it had been included in error was explained to the defendant. (1/27/04 Tr. at 13–15, 22–23.) Moreover, any arguable confusion created by this deletion is of no relevance, since any three-point reduction for a mitigating role could have no effect given the ten-year mandatory minimum sentence that defendant would have to serve even if his Guideline range were to fall below the 120–month mark.

The record therefore conclusively demonstrates that there was no rush or confusion during the plea colloquy. On the contrary, "[t]here is simply no room in this record for doubt that [defendant's] guilty plea was attended by all the required procedural safeguards." *Cray*, 47 F.3d at 1208.

---

**2.** In its opposition to defendant's motion to withdraw, the government now opposes the three-point reduction for acceptance of responsibility. (Gov't's Opp. at 2 n. 3.) This issue will be addressed at the time of sentencing.

**3.** In fact, the Presentence Report has concluded that the Guideline range is, as predicted, 121 to 151 months.

## III. Ineffectiveness of Counsel

▮▮▮ Defendant also argues that his plea was defective because he was provided ineffective assistance of counsel. To make out a claim of ineffective assistance of counsel sufficient to withdraw a guilty plea, a defendant must show that counsel's advice was not "within the range of competence demanded of attorneys in criminal cases," and that as a result, he was prejudiced. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (internal quotations omitted). In the plea context, this means that "in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. 366. But "a defendant must make more than a bare allegation that he 'would have pleaded differently and gone to trial.'" *United States v. Horne*, 987 F.2d 833, 836 (D.C.Cir.1993) (quoting *Key v. United States*, 806 F.2d 133, 139 (7th Cir.1986)). And this inquiry is "closely related to the objective prediction of whether the defense could succeed if the case went to trial," for "even prior to *Hill*, this Circuit required a colorable claim of innocence to justify vacating a plea on effective assistance of counsel grounds." *United States v. Del Rosario*, 902 F.2d 55, 58 (D.C.Cir.1990) (internal citation and quotation marks omitted). In this regard, defendant "must affirmatively advance an objectively reasonable argument that he is innocent." *Cray*, 47 F.3d at 1209. *See also United States v. Farley*, 72 F.3d 158, 165 (D.C.Cir.1995) ("Finally, Farley has not proffered even a hint of any defense, much less a suggestion that he could have succeeded had he gone to trial."); *United States v. Harris*, 894 F.Supp. 20, 25 (D.D.C.1995); *United States v. Shah*, 263 F.Supp.2d 10, 25 (D.D.C.2003). Applying *Hill*'s two-pronged test, the Court concludes that defendant fails to meet either prong.

Defendant faults counsel for advising him to plead guilty and for viewing the case as being indefensible. Such an argument defies logic. The government had persuasive evidence of defendant's involvement in at least three drug transactions. At trial, the government would have been able to prove that on May 21, 2003, a confidential informant gave Ann Arrington money, and thereafter, Arrington met with Curry, who was sitting in a Cadillac registered in his name in front of Arrington's house. Thereafter, Curry drove away, returned a short time later and again met Arrington in front of her house. Arrington then exited the car and gave 30.0 grams of crack cocaine to the informant.

Similarly, on June 6, 2003, the informant met Arrington at her house, requested more crack from Curry and had Arrington contact him. Curry again arrived in his Cadillac. Arrington received the money from the informant, and she then met with Curry in his car. Curry was videotaped returning to the 5909 Clay Street apartment where he went to the second floor of the apartment building, and then he came out and drove to Arrington's residence. Arrington got into Curry's car with him and then returned to her residence with 30.9 grams of crack which was then sold to the informant.

Finally, as previously discussed, a similar transaction involving Arrington and Curry was underway on June 16, 2003, involving a proposed sale of 31 grams of crack when the police arrested Curry in the car he was driving. After arresting him, a search was conducted and the police found 43.3 grams of crack under the front passenger's seat and $4,190 in cash on Curry's person. Also, a search of the apartment that Curry had been seen en-

tering and leaving at 5909 Clay Street revealed multiple weapons, ammunition, additional cocaine and heroin, and drug paraphernalia.

As his brief recitation of the evidence indicates, the government had a strong case, and even to this day (as explained more fully in Section IV, *infra* ), defendant advances no "objectively reasonable argument that he is innocent." *Cray,* 47 F.3d at 1209. Based on this evidence, which was known to counsel and to the defendant prior to entering a guilty plea, it was prudent, and certainly not deficient, for counsel to advise Curry to plead guilty and to thereby avoid a mandatory minimum sentence of 240 months, as opposed to a sentence in the 121 to 151 month range. *See, e.g., United States v. Sparrow,* 371 F.3d 851, 854 (3d Cir.2004); *Taylor v. Bowersox,* 329 F.3d 963, 972 (8th Cir.2003).

Further, with respect to the "prejudice" inquiry, defendant cannot satisfy this requirement. He does not even affirmatively allege, much less establish to a reasonable probability, that he would have chosen to go to trial. *See Horne,* 987 F.2d at 835–36. Nor does he show any reason to believe that he would have succeeded at trial, *see id.,* and as discussed below, he proffers no plausible defense. *See Farley,* 72 F.3d at 163. Indeed, the "overwhelming evidence suggests that appellant's decision to plead guilty was a rational choice." *Horne,* 987 F.2d at 836 (internal citation and quotation marks omitted). It therefore strains credulity for Curry to propose that "there [was] a reasonable probability that ... he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. 366.

## IV. Defense of Innocence

■ With respect to *Cray* 's requirement that defendant must make out a claim of innocence, it is not enough for defendant to "make a general denial in order to put the Government to its proof; he must affirmatively advance an objectively reasonable argument that he is innocent." *Cray,* 47 F.3d at 1209. This is because "[t]here are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal." *Barker,* 514 F.2d at 221. Further, "[a] guilty plea is very typically entered for the simple 'tactical' reason that the jury is unlikely to credit the defendant's theory or story." *Id.*

First, any claim of innocence is belied by the factual proffer that defendant signed at the time of the plea and his admissions of guilt during the plea colloquy. (*See* 1/27/04 Tr. at 9–12.) Defendant acknowledged his guilt with respect to the conspiracy charge, including the sales on May 21 and June 6, as well as the attempted sale on June 16. He also accepted responsibility for 104.2 grams of crack, 80 grams of cocaine powder and .92 grams of heroin on the record (1/27/04 Tr. at 6) and in ¶ 2 of his plea agreement. As observed by the Seventh Circuit in *United States v. Stewart,* 198 F.3d 984 (7th Cir.1999):

Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard. A defendant has no legal entitlement to benefit by contradicting himself under oath. Thus when the judge credits the defendant's statements in open court, the game is over.

*Id.* at 987.

Despite his unequivocal admissions of guilt during the plea colloquy and by signing the Proffer, defendant now asserts, through counsel, that he had a reasonable defense of innocence since "no controlled buys ever occurred in this case from Mr. Curry. He was never found in actual pos-

session of any drugs. He did not own the car or lease the apartment where the drugs were found .... The seizure lists relating to the apartment which was the subject of the search warrant ... indicated that many persons were identified in direct evidence through findings of official identification and other evidence." (Amended Mot. to Withdraw at 1.)

Not only are these assertions legally insufficient, they are factually incorrect. First, these assertions by counsel do not justify the withdrawal of a plea, for even if true, they do not make out a legally cognizable defense. But more importantly, they are not supported by the record. The fair inference from the evidence is that defendant was involved in three controlled buys in which he was the supplier and Ann Arrington acted as the broker. The evidence would also support a jury finding that on June 16, 2003, Curry was in constructive possession of the drugs in the car, as well as those in the apartment. Whether others were present in the car or lived in the apartment as well in no way undercuts the government's strong evidence of possession nor are these allegations inconsistent with defendant's sworn admissions at the time the plea was entered.

## CONCLUSION

Defendant has failed to show either that there was a fatal defect in the Rule 11 proceeding, that counsel was ineffective in advising him to plead, or that justice demands the withdrawal of his guilty plea. Nor do defendant's claims of ineffectiveness raise "detailed and specific factual allegations whose resolution requires information outside of the record or the judge's personal knowledge or recollection."

4. The Court does not intend to take evidence on November 3, since any enhancement based on the alleged possession of firearms

*United States v. Pollard,* 959 F.2d 1011, 1031 (D.C.Cir.1992) (internal citation and quotation marks omitted). *See also United States v. Patterson,* 652 F.2d 1046, 1047–48 (D.C.Cir.1981). Therefore, defendant's request for an evidentiary hearing is denied, his motion to withdraw is **DENIED**, and the Court will proceed with sentencing on November 3, 2004.[4] Given the Court's refusal to permit defendant to withdraw his plea, his *pro se* Motion to Dismiss Information and Charges With Prejudice Unconstitutional Statute is also **DENIED**.

would contravene the Supreme Court's ruling in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).