# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 13, 2007         Decided July 31, 2007

No. 05-3101

UNITED STATES OF AMERICA,
APPELLEE

v.

GREGORY CURRY,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cr00305-01)

---

*Mary E. Davis*, appointed by the court, argued the cause and filed the brief for appellant.

*Cassidy Kesler Pinegar*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese, III*, *Elizabeth Trosman*, and *Kenneth F. Whitted*, Assistant U.S. Attorneys.

Before: TATEL, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Gregory Curry pled guilty to a single count of conspiring to distribute and to possess with intent to distribute cocaine base, in exchange for the government's agreement to drop numerous additional charges.  Before he was sentenced, Curry moved to withdraw his plea, arguing that his attorney's advice that his case was "hopeless" amounted to constitutionally ineffective assistance.  The district court denied the motion.  On appeal, Curry contends that the court abused its discretion in denying his request to withdraw his plea.  We reject that contention and affirm the judgment of the district court.

I

On July 17, 2003, a grand jury returned a twelve-count indictment against Curry and co-defendant Ann Arrington. Count One charged the defendants with conspiracy to distribute and to possess with intent to distribute 50 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 846 and § 841(a)(1).  The remaining counts charged additional violations of the narcotics and firearms laws.  On November 6, 2003, Arrington pled guilty to Count One, and to a similar count in an unrelated case.

The day before Curry's trial was scheduled to begin, the district court conducted a hearing on Curry's motion to suppress evidence.  At that hearing, FBI Special Agent Brian Wilhite testified in considerable detail about the events that preceded Curry's arrest on June 18, 2003.  Wilhite testified as follows.

On June 6, 2003, the FBI employed an informant to make a "controlled buy" of 31 grams of crack from Curry, using Arrington as an intermediary.  Agent Wilhite searched the informant and the informant's vehicle and gave the informant recorded funds to use for the purchase.  Agents then followed the informant to Arrington's apartment on 61st Street in

northeast Washington, D.C., maintaining video and audio surveillance. After the informant arrived, Arrington called Curry, who drove up in a red Cadillac a short time later. Arrington went outside, got into the car with Curry, and then got out. Curry then drove away, and some time later other agents videotaped him arriving at 5909 Clay Street, N.E., where he entered and exited apartment 204. Shortly thereafter, Curry returned to Arrington's residence and parked immediately behind the informant's car, in which Arrington and the informant were then sitting. Arrington got out of the informant's car, climbed into Curry's car, spoke with Curry, and returned to the informant's car, where she gave the informant 31 grams of crack cocaine. Afterwards, Wilhite met with the informant and took possession of the drugs and the recording device that the informant had worn.

On June 18, the FBI used the same informant to arrange another controlled buy from Curry through Arrington. This time, Curry arrived at Arrington's residence in a burgundy Dodge Neon, met with Arrington, and drove back to the apartment on Clay Street. He entered the apartment, remained inside for approximately two minutes, and then returned to the car. At that point, FBI agents moved in and arrested him. When the agents searched the Dodge Neon, they discovered 40 to 44 grams of crack beneath the front passenger seat, where a female juvenile had been sitting. They also recovered $4,000 from Curry's person. After arresting Curry, Wilhite read him his *Miranda* rights. Curry waived his right to remain silent, and indicated that "he was not going to cooperate . . . and . . . he was just going to have to take his punishment." Suppression Hr'g Tr. 62 (Jan. 26, 2004). He also "said that he had been in the business, he wanted to get out of the business, but as of that point he had not." *Id.*

In its opposition to Curry's motion to suppress, the government also advised the court that a post-arrest search of the Clay Street apartment had yielded five firearms, ammunition, cocaine, heroin, and drug paraphernalia, as well as evidence linking Curry to the apartment. That evidence included various documents bearing Curry's name. Telephone records subpoenaed to support the search warrant for the apartment also listed Curry as the subscriber to the telephone service in the apartment. In addition, the government advised the court that it would introduce evidence that Curry had been involved in another, 30-gram crack sale to the same informant on May 21, 2003.

During the course of the suppression hearing, the court and counsel discussed the applicability of the United States Sentencing Guidelines to Curry's case. Based on a prior drug conviction, the government had filed enhancement papers pursuant to 21 U.S.C. § 851(a), which would subject the defendant to a mandatory minimum sentence of 240 months if he were convicted at trial, *see* 21 U.S.C. § 841(b). The government had also made a plea offer to Curry, which was put on the record. The court advised Curry that the sentence under the plea offer (which included withdrawal of the enhancement papers) carried only a ten-year mandatory minimum and an estimated Guidelines range of 121 to 151 months (assuming a three-level reduction for acceptance of responsibility). The district court instructed Curry to speak with his attorney and to consider his alternatives over the evening recess.[1]

The next day, Curry and the government entered into a written agreement, under which Curry agreed to plead guilty to

---

[1]At the close of the suppression hearing, the district court indicated that it was inclined to deny the motion to suppress, but that it would entertain further submissions from the parties.

Count One of the indictment. The government, for its part, agreed to withdraw the enhancement papers and to dismiss all of the remaining counts. The agreement explained that Curry would face a minimum sentence of ten years. It also noted that, if instead he were convicted at trial without a plea, the enhancement papers "would require [him] to serve a mandatory term of 20 years' (240 months') incarceration." J.A. 57.

As part of the agreement, Curry signed a "proffer of evidence," which read as follows:

> Between May 2003 and June 18, 2003, in the District of Columbia, Gregory Curry, the defendant, did knowingly and intentionally agree together with another person to unlawfully, knowingly and intentionally distribute and possess with intent to distribute 104.2 grams of cocaine base (crack), 80.7 grams of cocaine hydrochloride, and 0.92 grams of heroin. During the period of the conspiracy, Defendant Curry sold and distributed approximately 30 grams of cocaine base on May 21, 2003, and on June 6, 2003. Moreover, on June 18, 2003, defendant Curry intended to sell an additional 30 grams of cocaine base and possessed additional controlled substances on this date inside 5909 Clay Street . . . .

J.A. 14. Curry's signature appears below a paragraph that states: "I have discussed this proffer fully with my attorney . . . . I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation." J.A. 15.

After Curry signed the agreement, the district court conducted a plea hearing and engaged Curry in a lengthy colloquy. It informed him of his rights and of the nature of the

charges against him, and established that there was a factual basis for the plea and that it was knowing and voluntary. During the colloquy, Curry acknowledged that he was satisfied with his attorneys' representation, that they had "thoroughly investigated this matter and . . . the facts relating to this case," and that they had reviewed the plea agreement with him and answered his questions about it. Plea Hr'g Tr. 6-7 (Jan. 27, 2004).

The court scheduled Curry's sentencing for April 29, 2004. On that day, however, Curry told the court that he no longer wanted to be represented by his current attorneys. Thereafter, he retained new counsel and filed a motion to withdraw his guilty plea. In support, he contended that his plea proceeding had been flawed because it was rushed, and that his attorneys had been ineffective in advising him to enter into the plea.

The district court denied Curry's motion on October 20, 2004. *See United States v. Curry*, 344 F. Supp. 2d 22, 29 (D.D.C. 2004). On April 22, 2005, the court sentenced him to 135 months in prison. Curry now appeals, contending that the district court abused its discretion by denying his motion to withdraw his guilty plea.

II

A defendant may withdraw a guilty plea prior to sentencing if he "can show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). Although "[w]ithdrawal of a guilty plea prior to sentencing is to be liberally granted," *United States v. Taylor*, 139 F.3d 924, 929 (D.C. Cir. 1998), we review a district court's refusal to permit withdrawal only for abuse of discretion, *United States v. Hanson*, 339 F.3d 983, 988 (D.C. Cir. 2003). In reviewing such a refusal, we consider three factors: "(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay

between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted." *Id.* (quoting *United States v. McCoy*, 215 F.3d 102, 106 (D.C. Cir. 2000) (quoting *Taylor*, 139 F.3d at 929)). In this case, the government concedes "that the withdrawal of [Curry's] guilty plea would not have prejudiced [it] at trial." Appellee's Br. 18 n.9. This factor, however, "has never been dispositive in our cases." *Hanson*, 339 F.3d at 988. Our review therefore focuses on the first and third factors.

With regard to the first factor, Curry contends that he "had a legitimate defense" to the charges against him. Appellant's Br. 7. He characterizes that defense as follows: "[T]here were no controlled buys from him, . . . he was never found in possession of any drugs, he did not own the car in which it was alleged drugs were transported, and . . . other individuals had access to the apartment from which contraband was recovered." *Id.* at 7-8. These assertions do not, however, constitute a "viable claim of innocence." *Hanson*, 339 F.3d at 988 (quoting *McCoy*, 215 F.3d at 106 (quoting *Taylor*, 139 F.3d at 929)). Indeed, they do not constitute a claim of innocence at all. A person can be found guilty on a theory of conspiracy, aiding and abetting, or constructive possession without ever having touched the drugs at issue. *See, e.g.*, *United States v. Harris*, __ F.3d __, slip op. at 22-24 (D.C. Cir. June 22, 2007); *United States v. Martinez*, 476 F.3d 961, 968-70 (D.C. Cir. 2007); *United States v. Dykes*, 406 F.3d 717, 721 (D.C. Cir. 2005). Curry's appellate brief does not include a single sentence declaring that he is actually innocent or disclaiming his admission of guilt at the plea proceeding. Although Curry did "assert[] his innocence to the charges" in his motion to withdraw the plea before the district court, J.A. 35, that kind of "general denial" is not sufficient to satisfy the first factor, *United States v. Cray*, 47 F.3d 1203, 1209 (D.C. Cir. 1995).

What Curry's argument really amounts to is the claim that, if he went to trial, a jury might not be persuaded that the government had met its burden of proving his guilt beyond a reasonable doubt. We have previously found such a claim insufficient to satisfy the first factor. *See id.* ("A defendant appealing the denial of his motion to withdraw a guilty plea, unlike a defendant who has not first pled guilty, must do more than make a general denial in order to put the Government to its proof; he must affirmatively advance an objectively reasonable argument that he is innocent, for he has waived his right simply to try his luck before a jury." (internal citation omitted)); *see also* FED. R. CRIM. P. 32(d) advisory committee's notes to 1983 amendments (commenting on the predecessor of the current Rule 11(d), and stating that "[w]hether the movant has asserted his legal innocence is an important factor to be weighed" in determining whether his reason for requesting withdrawal of his plea is "fair and just").[2]

It is true that some of our cases have characterized this first factor as requiring a "legally cognizable defense" rather than as requiring a viable claim of innocence, *see, e.g.*, *United States v. Shah*, 453 F.3d 520, 522 (D.C. Cir. 2006), and that many have used the terms interchangeably, *see, e.g.*, *McCoy*, 215 F.3d at 106; *Cray*, 47 F.3d at 1207, 1209; *United States v. Ford*, 993 F.2d 249, 251 (D.C. Cir. 1993). But even if putting the government to its proof constituted a "legally cognizable defense" within the meaning of those cases, there is no question that doing so in this case had a very limited chance of success, as we discuss further below. Under these circumstances, we "cannot conclude that the district court abused its discretion in

---

[2]In 2002, the provision of the Federal Rules relating to plea withdrawals was moved from Rule 32 to Rule 11. *See* FED. R. CRIM. P. 32 advisory committee's notes to 2002 amendments.

deciding that [Curry's proffered] defense added little weight on the side of permitting withdrawal." *Hanson*, 339 F.3d at 988.

The remaining factor is whether Curry's guilty plea was tainted in some manner. Curry does not contend that his plea proceeding violated the requirements of Federal Rule of Criminal Procedure 11. *See* Appellant's Br. 8. And he has abandoned his earlier argument that the plea was rushed by the district court. Instead, he rests on the claim that, "because of his attorney's ineffective performance, . . . his plea was not voluntary." *Id.*

In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held that "challenges to guilty pleas based on ineffective assistance of counsel" must be evaluated under the general test for ineffective assistance set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Such a claim requires two showings: "First, the defendant must show that counsel's performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

To establish deficient performance, "a defendant must show that his counsel's performance fell below 'an objective standard of reasonableness' under prevailing professional norms." *United States v. Glover*, 153 F.3d 749, 758 (D.C. Cir. 1998) (quoting *Strickland*, 466 U.S. at 687-88). Curry's claim of deficient performance is based solely on his allegation that one of his attorneys wrongly "told him the case was hopeless." Appellant's Br. 11. Since the district court did not hold an evidentiary hearing, we do not know whether the attorney actually told Curry his case was hopeless. But even if he did, we do not believe that such an assessment fell outside "the range of competence demanded of attorneys in criminal cases." *Hill*,

474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

Curry insists that his case was not "hopeless," because he had "a colorable claim of innocence." Appellant's Br. 11. For Curry, apparently, "[h]ope springs eternal." ALEXANDER POPE, ESSAY ON MAN 30 (MacMillan and Co. 1869) (1733). But even if we were to adopt Curry's sunny perspective and regard his attorney's assessment as overly pessimistic, we could not say that it was unconstitutionally so. As the district court emphasized, "[t]he government had persuasive evidence of defendant's involvement in at least three drug transactions." 344 F. Supp. 2d at 27-28. At trial, Curry would have faced: the testimony of the FBI agents who kept Curry, the informant, and Arrington under surveillance; in all likelihood, the testimony of one or both of the latter individuals; audio- and videotape of the controlled transactions; the cash found on his person and the drugs found in the car he was driving; documents, telephone records, and videotape tying him to an apartment containing more drugs, as well as guns and drug paraphernalia; and his own inculpatory post-arrest statements.

Under these circumstances, "any competent attorney would . . . have advised [Curry] that he stood little chance of obtaining an acquittal at trial." *Hanson*, 339 F.3d at 991. We do not think that the difference between "little chance" and "hopeless" is of constitutional magnitude. A lawyer is not required to rate a defendant's trial prospects with the precision of a Las Vegas bookmaker, and cannot be regarded as ineffective merely because a court might marginally disagree with that rating in hindsight. *See Strickland*, 466 U.S. at 689 (holding that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight," and that "a court must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance").

Moreover, the attorney's evaluation of Curry's case must be taken in context. As alleged by Curry, his attorney did not simply tell him that the case was hopeless, but that "the case was hopeless *and* that he should plead guilty." Appellant's Br. 5 (emphasis added). An important part of that calculation would have included a balancing of the likelihood that Curry would prevail at trial against the benefit to be obtained by accepting the plea offer. Curry was correctly "informed that if convicted at trial, he faced a mandatory minimum of 240 months, whereas a plea would involve a ten-year mandatory minimum and an estimated Guideline range of 121 to 151" months. 344 F. Supp. 2d at 24. We agree with the district court that, based on the evidence against Curry, "which was known to counsel and to the defendant prior to entering a guilty plea, it was prudent, and certainly not deficient, for counsel to advise Curry to plead guilty and to thereby avoid a mandatory minimum sentence of 240 months, as opposed to a sentence in the 121 to 151 month range." *Id.* at 28.

Because Curry has failed to satisfy the first prong of the *Strickland* test, we need not dwell on the second. We do note, however, that even if counsel's assessment were deficient, it is doubtful that the deficiency prejudiced Curry. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Moreover, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* These "predictions of the outcome at a

possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 59-60 (quoting *Strickland*, 466 U.S. at 695); *see Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2000) (describing *Hill* as holding that "the prejudice inquiry depends largely on whether th[e] affirmative defense might have succeeded, leading *a rational defendant* to insist on going to trial" (emphasis added)).

As we have discussed, even if Curry's case were not hopeless, any competent attorney would have advised him that his chance of success was slim. Any competent attorney would also have advised him that the deal offered by the government was a good one, particularly given the weakness of the defense case. We think it doubtful that, had a rational defendant been so advised, he would have chosen to go to trial. *See In re Sealed Case*, __ F.3d __, slip op. at 15-16 (D.C. Cir. June 1, 2007); *Hanson*, 339 F.3d at 991-92.

Finally, Curry contends that the district court erred in refusing to hold an evidentiary hearing on the request to withdraw his plea. Although a district court should "[o]rdinarily" conduct an evidentiary hearing "when a defendant seeks to withdraw a guilty plea on the basis of ineffective assistance of trial counsel," a court does not abuse its discretion in denying such a request where there are no material factual issues in dispute. *Taylor*, 139 F.3d at 932; *see United States v. Jones*, 381 F.3d 615, 618 (7th Cir. 2004); *see also United States v. Patterson*, 652 F.2d 1046, 1047-48 (D.C. Cir. 1981). Curry made (and makes) no controverted assertion that his attorneys failed to pursue a line of investigation, overlooked a potential defense, or gave incorrect advice regarding his sentencing exposure. His only allegation is that one attorney told him that his case was hopeless. We have concluded that, even assuming this allegation is accurate, it did not render counsel's

representation ineffective. Thus, there was no need for the court to conduct an evidentiary hearing.

## III

The district court did not abuse its discretion by denying Curry's request to withdraw his guilty plea or to hold an evidentiary hearing. The judgment of the district court is therefore

*Affirmed.*