# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 18-3038**

**September Term, 2020**

FILED ON: January 12, 2021

UNITED STATES OF AMERICA,
                APPELLEE

v.

KEYON ANTHONY MANNING, ALSO KNOWN AS LAMAR MARCUS WILLIAMS,
                APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cr-00231-1)

———

Before: ROGERS, PILLARD and WALKER, *Circuit Judges*.

### J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated in the memorandum accompanying this judgment, it is

**ORDERED** that the government's motion to take judicial notice be **GRANTED**. It is

**FURTHER ORDERED** and **ADJUDGED** that the judgment of the district court be **AFFIRMED**.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

### Per Curiam

                          **FOR THE COURT:**
                          Mark J. Langer, Clerk

          BY:    /s/
                   Daniel J. Reidy
                   Deputy Clerk

## **M E M O R A N D U M**

Keyon Anthony Manning, also known as Lamar Marcus Williams, challenges the validity of his October 2017 guilty plea to one count of possession with intent to distribute 100 grams or more of a substance containing a detectable amount of phencyclidine (PCP) and one count of using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iv) and 18 U.S.C. § 924(c).

## **I.**

**A.** As an initial matter, we grant the government's pending motion to take judicial notice of three documents in the docket of a related District of Maryland proceeding. *See* Fed. R. Evid. 201 advisory committee's note to subdiv. (f) ("[J]udicial notice may be taken at any stage of the proceedings, whether in the trial court or on appeal."); *Am. Council of the Blind v. Mnuchin*, 878 F.3d 360, 365 n.4 (D.C. Cir. 2017).

**B.** The issues on appeal relate to Manning's guilty plea acknowledging commission of further crimes while he was serving a term of supervised release for a 2009 conviction on federal gun and drug charges in the District of Maryland. In March 2014, law enforcement agents acting pursuant to a warrant encountered Manning in a one-bedroom apartment in D.C. with significant quantities of drugs including PCP, cocaine, and heroin, as well as two semiautomatic pistols. Although Manning was not the owner or leaseholder of the apartment, he was the only adult present and he held the keys. The agents arrested him for drug and gun possession. The government released him in April 2014 subject to GPS monitoring.

In August 2014, law enforcement executed a search warrant on another D.C. apartment where Manning was located and on a vehicle he was seen driving to that apartment. They discovered PCP and other contraband in the apartment and the car, as well as a semiautomatic pistol that Manning discarded while fleeing the scene. After evading arrest, Manning removed his GPS tracking device and remained at large for more than two years. In December 2014, a grand jury indicted Manning on charges stemming from the March arrest and August search.

This appeal directly challenges only Manning's plea to those D.C. charges, but rests in part on Manning's objection to a separate sentence he received in the District of Maryland. Manning's two years on the lam ended when he was arrested in November 2016 in a Maryland apartment where law enforcement officers discovered yet another semiautomatic pistol and more drugs. Thus, when plea negotiations on the D.C. charges ensued, Manning faced the specter of additional charges in Maryland.

**C.** Manning's attorneys and the U.S. Attorney's offices in both Maryland and the District of Columbia sought to negotiate a global plea agreement that would resolve all charges through concurrent prison sentences of seventeen to twenty years. A sentence in that range, although long, would be far less than the mandatory minimum of thirty years to life Manning faced on the D.C. charges alone. The effort to resolve the Maryland and D.C. cases together shifted gears when the parties discovered that the District of Maryland judge before whom Manning would appear did

not, as a matter of policy, accept pleas that bind the court to a particular sentence or range under Federal Rule of Criminal Procedure 11(c)(1)(C). The best the government could offer Manning was to recommend to the Maryland judge a concurrent sentence.

Manning's counsel strongly urged him to accept the plea agreement to resolve the D.C. charges. As he was considering the offer, Manning was rejecting his second appointed lawyer and retaining paid counsel, whom he soon in turn fired, but both lawyers unanimously and emphatically advised Manning to accept the plea. After at least two extensions to allow Manning to further consider the plea offer and consult with family, followed by a full Rule 11 colloquy in D.C. district court, he pleaded guilty in October 2017.

In accepting the plea, Manning admitted to the relevant facts of the drug and firearms charges noted above. Manning stated during the colloquy that he understood and agreed, among other things, that he was giving up his right to go to trial, that the agreement significantly limited his right to appeal, and, in the court's words, that "[t]his agreement does not bind the people in Maryland," only "the U.S. Attorney's Office here" in the District of Columbia. J.A. 62.

In early 2018, through his fourth attorney, Manning filed a notice of his intent to withdraw his plea. The motion to withdraw argued that the plea was not knowing and voluntary because Manning "was not certain of the ramifications of his guilty plea in this matter upon his Federal Court matter in Maryland"—"concerns [that he asserted] were not addressed between the time that he initially raised [them] with the court and the time that he ultimately capitulated . . . and entered a plea of guilt." J.A. 106. At an April 2018 hearing on the motion, the district court offered Manning the opportunity to put on testimony in support of his motion. Manning declined. He based his motion on the transcript of the October 2017 plea hearing.

**D.** The district court denied Manning's motion to withdraw his plea. In so doing, it applied the three-factor standard from *United States v. Curry*, 494 F.3d 1124, 1128 (D.C. Cir. 2007), considering "(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted." *Id.* (quoting *United States v. McCoy*, 215 F.3d 102, 106 (D.C. Cir. 2000)). The court observed that Manning's assertion of innocence was general and conclusory and thus insufficient to satisfy the first factor. *See* J.A. 138-39 (citing *United States v. Cray*, 47 F.3d 1203, 1209 (D.C. Cir. 1995)). The government conceded the second factor, recognizing it would not have been prejudiced had Manning been allowed to proceed to trial.

Regarding the third factor, the court noted that Manning did not identify any defect with the plea colloquy but had instead asserted that his plea was involuntary because he had not fully understood its consequences. With no claim of Rule 11 error, the court thought Manning faced "an extremely heavy burden" to prevail on the motion. J.A. 141 (quoting *Cray*, 47 F.3d at 1208). The court observed that this was not Manning's first experience with the plea-bargaining process, he had received multiple extensions to consider the offer, he had read and acknowledged that he understood the terms of the agreement, and the colloquy had been more detailed than usual because Manning had raised specific concerns, which the court addressed. The court denied the motion.

Manning sought reconsideration. He attached to his reconsideration motion an affidavit in which he asserted that he was actually innocent, and an affidavit from his mother attesting that she had pressured him into accepting the plea. Incorporating its analysis of the original motion to withdraw, the district court found these belated averments fell far short of showing Manning had a viable claim of innocence or that Manning's plea had been involuntary.

In June 2018, the district court sentenced Manning to 216 months—eighteen years—in prison. That sentence was within the range of seventeen to twenty years agreed to in the binding Rule 11(c)(1)(C) plea agreement.

Later the same month, Manning appeared in the U.S. District Court for the District of Maryland, but not on new charges arising from the 2016 Maryland arrest. The U.S. Attorney's office instead opted to pursue only revocation of the supervised release from his 2009 conviction in the District of Maryland, the terms of which Manning violated by committing the new drug and firearms offenses. *See* Attach. B to Mot. to Take Judicial Notice at 14. Manning again admitted the facts underlying his D.C. plea agreement. *Id.* at 6-11. The government sought, and the Maryland court ultimately imposed, a thirty-six-month revocation sentence to be served consecutively to the eighteen years imposed by the district court here. *Id.* at 14, 21.

## II.

In this appeal, Manning claims that his D.C. guilty plea was not knowing and voluntary and that the district court erred in denying his motion to withdraw the plea. Manning also asserts a related claim of ineffective assistance of counsel. He contends that, as "inducement for him to plead" guilty in this case, his lawyer and the government represented that he "was being offered a *concurrent* sentence" on charges he faced in the District of Maryland for separate offenses when, in fact, he was ultimately sentenced to a consecutive term of imprisonment by the Maryland court. Appellant Br. 10. He says his plea was not knowing and voluntary because he "relied upon" his "[c]ounsel's representations" in open court, "to the extent they provided him a reasonable belief that in accepting the plea's lengthy sentence range . . . he would not be burdened with more time in the parallel case from Maryland." *Id.* at 15. Both of Manning's challenges fail.

### A. The Guilty Plea Was Knowing and Voluntary

The record belies Manning's contention that he was misinformed about the consequences of his plea. We review the entire record, *see United States v. Lee*, 888 F.3d 503, 505 (D.C. Cir. 2018), and assess the voluntariness of a plea *de novo*, *see Marshall v. Lonberger*, 459 U.S. 422, 431 (1983); *United States v. Ward*, 518 F.3d 75, 80 (1st Cir. 2008). In support of his claims, Manning emphasizes that his attorney told a district judge to whom the case had recently been reassigned that Manning faced "a parallel plea . . . in Maryland that would be roughly concurrent time." J.A. 25. But that statement, which on its face promises nothing, was part of counsel's explanation why Manning needed more time to consider the plea offer.

During Manning's next court appearance, his attorney, the government, and the court discussed why a binding plea agreement in both the D.C. and Maryland cases was impossible: The judge before whom Manning's case was assigned in Maryland did not accept pleas that bind the

court to a particular sentence or range under Federal Rule of Criminal Procedure 11(c)(1)(C). Accordingly, the district court here clarified that the plea the government was offering Manning in this case "doesn't bind the [District of Maryland] judge in any way." S.A. 61. Manning's attorney and the government agreed, expressing their expectation only that "the recommendation by both parties would be very strongly considered by [the Maryland] [c]ourt," and that "both sentences, hopefully, would run concurrent." S.A. 62. "But just to be fair on the record," the judge again cautioned, "there's not a guarantee." S.A. 62.

Those caveats were reiterated on the day the court accepted the plea. And the record reflects Manning understood as much. At the scheduled plea hearing, Manning initially said that he wanted to go to trial, in part because he was dissatisfied that the plea deal would not also resolve potential charges in Maryland. J.A. 33. The court again confirmed that "there are no guarantees" regarding the Maryland proceedings or any resulting sentence but explained that "[t]he government thinks [consecutive sentencing] won't happen." J.A. 33. The prosecutor reiterated that a binding global plea was impossible but that the U.S. Attorney's office in Maryland had agreed "to allocute and highly recommend a concurrent sentence." J.A. 37.

Manning has not pointed to evidence that "trial counsel (mis)represented to [him] that . . . he had an offer for a concurrent sentence on his parallel case out of federal court in Maryland." Appellant Br. at 12. His challenge rests solely on statements made in open court. *See* S.A. 84-85. The statements he quotes as misleading were accurate. There is no evidence that his counsel ever told him that the government's undertakings in relation to his plea here could bind the judge in Maryland, or that the judge in that case could not sentence him beyond the 240-month high end of the sentencing range the district court here accepted as binding under Rule 11(c)(1)(C). Indeed, his counsel, the prosecutor, and the court consistently told him otherwise. The agreement they described was that, in exchange for Manning's plea here, and once he also pleaded guilty to the separate charges in the District of Maryland, the D.C. and Maryland U.S. Attorney's offices would recommend that any sentence for the Maryland offenses run concurrently with the sentence imposed following the plea here. J.A. 37; S.A. 61.

As it happened, the government's obligation to recommend concurrent sentencing in Maryland did not arise: Manning did not plead guilty to any new charge in Maryland. Indeed, the U.S. Attorney in the District of Maryland decided not to press new gun or drug charges arising from Manning's November 2016 arrest in Maryland, on which the negotiated sentencing recommendation was to be made, but instead determined to resolve them together with the violations of terms of supervised release stemming from Manning's 2009 conviction in the District of Maryland. Attach. B to Mot. to Take Judicial Notice at 14. The supervised release terms that Manning had violated were concurrent five-year and three-years terms. Attach. A to Mot. to Take Judicial Notice at 3. Based on his violations, the Maryland district court sentenced him to serve three of those years in prison. *Id.* at 2. At the hearing preceding the revocation of supervised release, neither Manning nor his counsel requested that the revocation sentence run fully concurrently with the sentence imposed in this case, *see* Attach. B to Mot. to Take Judicial Notice at 18, nor did they contend that the government had violated any agreement by requesting a consecutive revocation sentence.

In view of the entire record, Manning has made no plausible showing that the district court abused its discretion in denying his motions to withdraw his guilty plea and to reconsider that denial. *See Curry*, 494 F.3d at 1128.

The required showing of innocence in support of the motion faced a steep hurdle once Manning agreed in his plea to having possessed the charged PCP and firearm. J.A. 92-93. A "motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." *United States v. Jones*, 642 F.3d 1151, 1158 (D.C. Cir. 2011) (quoting *United States v. Shah*, 453 F.3d 520, 523 (D.C. Cir. 2006)). Manning had no compelling explanation.

Manning made only a conclusory assertion that he was actually innocent of the offenses he admitted based on a lack of proof that he in fact possessed the charged firearm or PCP. The motion for reconsideration belatedly included an affidavit in support of Manning's innocence claim, but even so the court did not err when it declined to credit Manning's new denials as "an objectively reasonable argument that he is innocent." *Cray*, 47 F.3d at 1209.

And on the question whether the guilty plea was somehow tainted—*Curry*'s third factor— as discussed above, Manning has not shown that the plea was affected by any reasonable confusion about the effect of the agreement on his sentencing exposure in the District of Maryland. To the contrary, Manning was repeatedly advised by his counsel and by the court, including during the plea colloquy, that this agreement could not bind the judge who might sentence him in Maryland.

## B. Plea Counsel Provided Constitutionally Effective Assistance

Manning claims his counsel was ineffective for erroneously advising him that he would receive a concurrent sentence in Maryland, and for failing to move to suppress PCP found during the August 2014 search of a car Manning was seen driving. "A defendant claiming ineffective assistance of counsel must 'show two things: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.'" *United States v. Smoot*, 918 F.3d 163, 168 (D.C. Cir. 2019) (quoting *In re Sealed Case*, 901 F.3d 397, 404 (D.C. Cir. 2018)); *see Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985). Our "general practice" is to remand ineffective assistance claims raised for the first time on appeal for development before the district court. *United States v. Rashad*, 331 F.3d 908, 909-10 (D.C. Cir. 2003) (quoting *United States v. Fennell*, 53 F.3d 1296, 1303-04 (D.C. Cir. 1995)). We need not do so in the exceptional case in which "we find the issue clear enough to decide for ourselves." *United States v. Han*, 962 F.3d 568, 575 (D.C. Cir. 2020). That is the case here.

As explained above, Manning opted to rest his claims entirely on the existing record of discussions in open court. The record conclusively contradicts Manning's position that his attorney misinformed him about the Maryland proceeding, foreclosing a showing of objective deficiency in that respect. *See United States v. Marshall*, 946 F.3d 591, 596 (D.C. Cir. 2020).

6

It is also clear that Manning cannot demonstrate prejudice. To prove prejudice at the plea stage, a defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Smoot*, 918 F.3d at 168 (quoting *Hill*, 474 U.S. at 59). It is apparent that Manning suffered no prejudice here from either of his counsel's alleged deficiencies.

First, had he gone to trial—which he does not even now contend he had a meaningful chance of winning—Manning would have faced a mandatory minimum sentence of thirty years to life on the D.C. charges alone, far longer than the term he received. The likelihood that Manning would have been convicted and the risk of a much longer sentence belie his effort to suggest he would have gone to trial if he had appreciated that the judge in the District of Maryland was not bound by his D.C. plea agreement. *See In re Sealed Case*, 488 F.3d 1011, 1019 (D.C. Cir. 2007).

Second, Manning argues that his attorney should have moved to suppress the PCP found in a car Manning had been seen driving in August 2014. He asserts suppression was required on the basis that the date on the warrant did not match the date of the search. Assuming without deciding the validity of that argument, he cannot show prejudice because the quantity of PCP recovered from the car, which he claims should have been suppressed, was a small fraction (44 grams) of the total drugs with which Manning was charged (about 454 grams of PCP and significant quantities of other drugs), and far too small a portion to call into question his plea to possessing 100 grams or more of a substance containing a detectable amount of PCP. Manning accordingly cannot demonstrate that that even a successful suppression motion would have raised a reasonable probability that he would have chosen to go to trial.

\* \* \*

For the reasons stated, we affirm the district court's denial of the motion to withdraw the guilty plea and the motion to reconsider that denial. We also deny Manning's claim of ineffective assistance of counsel without remanding for the district court to consider it in the first instance because Manning rests the claim entirely on the existing record and it obviously lacks merit.

7