# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 11, 2019        Decided March 19, 2019

No. 18-3007

UNITED STATES OF AMERICA,
APPELLEE

v.

CHARLES LEE SMOOT,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cr-00137-1)

*Dennis M. Hart*, appointed by the court, argued the cause and filed the brief for appellant.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman* and *Suzanne Grealy Curt*, Assistant U.S. Attorneys.

Before: SRINIVASAN, *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: On September 20, 2017, Appellant, Charles Smoot, pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). He was subsequently sentenced to 96 months of incarceration. He now appeals to overturn his conviction and sentence.

In support of his appeal, Appellant raises three claims of ineffective assistance of counsel. He contends, first, that his counsel was inadequately prepared for trial, second, that his counsel failed to object to an erroneous finding allegedly made by the District Court during sentencing and, third, that a conflict of interest existed between him and his counsel. Appellant's first claim of ineffective assistance of counsel fails because, even assuming that counsel was inadequately prepared, Appellant has failed to show that this caused him to plead guilty. Appellant's second claim fails because it is based on a mischaracterization of the record. Appellant asserts that the District Court erroneously found, at sentencing, that Appellant possessed a gun during the robbery, and that counsel for Appellant should have objected to that finding. The record is clear, however, that the District Court made no such finding and, therefore, counsel could not have been ineffective for failing to object. Appellant's third claim fails because he has not even alleged that the purported conflict of interest actually affected his counsel's performance.

Appellant also argues that his plea agreement is invalid because the District Court impermissibly participated in plea bargaining in violation of Rule 11 of the Federal Rules of Criminal Procedure ("Rule 11"). However, we find no merit in this claim because the record establishes that the trial judge did not attempt to influence or coerce Appellant into taking a plea, nor did the judge otherwise inappropriately participate in plea bargaining.

Because Appellant has failed to show that he was prejudiced by his counsel's performance and, further, because the record shows that the District Court did not inappropriately participate in plea bargaining, we affirm.

## I. BACKGROUND

On July 5, 2017, at 9:45 a.m., the TD Bank on Rhode Island Avenue in Washington, D.C., was robbed by a man wearing a hat with a skull on it, sunglasses, jeans with frayed cuffs and an insignia, a large black watch with a white border, and light gray shoes with white soles. The robber was also carrying a magazine and a black bag with an Under Armour logo on it. The robber passed demand notes to two tellers, and he said something along the lines of "Give me all your money or I'll kill everyone in here." The tellers gave him approximately $5,000. The money that was handed over by the tellers included GPS trackers. The robber did not brandish a weapon, but he did keep one hand concealed in the bag throughout the robbery. The robbery was captured on high definition surveillance cameras from several angles in the bank.

Shortly after the robbery, the police began tracking the money using data coming from the GPS devices. The two tracking devices appeared together for a period of time before separating near 62nd Street N.E. Officers found one tracking device along with some of the money in a black plastic bag near 308 63rd Street N.E. Data from the second tracking device led them to a residence at 405 60th Street N.E. They began surveilling the house and saw a man later identified as Appellant. His clothing did not match the clothes seen on the robber, but he was wearing a watch and sneakers that appeared to be the same as those worn by the robber. The officers observed Appellant holding what appeared to be a large wad of

currency. They also saw a different individual put a GPS tracking device in a storm drain in front of the house, where it was later found. Appellant then drove away from the house. The officers attempted to conduct a traffic stop to detain Appellant, but he fled.

Officers then obtained a warrant to search 405 60th Street N.E., a residence where approximately a dozen individuals, including Appellant, were living at the time. During the search, officers found, on a washing machine in the house, the pants with the frayed hem and emblem that the bank robber wore. The officers also found a bag that looked like the Under Armour duffel bag carried by the robber. Another resident of the house told the officers that the bag belonged to "Chuck," or Charles Smoot. That resident also informed officers that Appellant had been in the house that morning, left for a period of time, and then returned to the house. She told officers that Appellant was wearing a hat with a skull on it, like the hat worn by the bank robber.

Appellant was arrested two days later. At the time of his arrest, he was wearing gray sneakers with white soles like those worn by the bank robber. He was also wearing a large black watch with a white border, like the watch worn by the robber. A DNA examiner concluded that Appellant's DNA was on the Under Armour bag found at 405 60th Street N.E. A handwriting expert who analyzed the demand notes at the bank concluded that they were likely written by Appellant. Appellant's fingerprints were found on the magazine carried by the robber, which had been left behind in the bank. In addition, a witness who knows Appellant identified him as the robber based on stills from the bank surveillance cameras.

On July 11, 2017, Appellant was indicted by a grand jury on one count of bank robbery, in violation of 18 U.S.C.

§ 2113(a). The next day, Appellant appeared before a magistrate judge and requested that the judge replace his counsel, a federal public defender. That request was granted and, on July 13, a new attorney entered an appearance to represent Appellant.

The parties appeared before the District Court on several occasions during the pendency of the case. During one pretrial hearing, which took place on September 1, it came to light that defense counsel may not have communicated the details of a then-expired plea offer to Appellant. In light of this revelation, the Government re-extended the plea offer to Appellant. When Appellant indicated that he was going to reject the offer, the Government asked the District Court to explain the details of the plea offer to Appellant on the record to ensure that Appellant understood the offer and was knowingly and voluntarily rejecting it. The District Court then explained the offer and answered Appellant's questions about it. At the conclusion of the hearing, Appellant rejected the plea offer.

On September 15, the parties appeared again before the District Court. Among other matters, the parties discussed a *pro se* motion for substitute counsel filed by Appellant, which motion the District Court denied.

Shortly thereafter, Appellant accepted an offer identical to the offer he had rejected on September 1. On September 20, Appellant entered a guilty plea before the District Court. The plea agreement provided that the Government would "cap its allocution at the low end of the Guidelines," which it estimated to be 63 to 78 months. Supplemental Appendix 201–02. The agreement further provided that Appellant would waive certain rights, including his right to appeal,

except to the extent the Court sentences [Appellant] above the statutory maximum or guidelines range determined by the Court or [Appellant] claims that [he] received ineffective assistance of counsel, in which case [Appellant will] have the right to appeal the illegal sentence or above-guidelines sentence or raise on appeal a claim of ineffective assistance of counsel, but not to raise on appeal other issues regarding the sentencing. . . . Realizing the uncertainty in estimating what sentence the Court ultimately will impose, [Appellant] knowingly and willingly waives [his] right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement.

*Id.* at 204.

The District Court sentenced Appellant on January 19, 2018. First, the court calculated Appellant's Federal Sentencing Guidelines ("Guidelines") range. The court gave Appellant the benefit of a three-point reduction for acceptance of responsibility because he pled guilty. The court then concluded that Appellant's Guidelines range was 77 to 96 months, an increase from the parties' calculation based on a two-point enhancement for making a death threat during the offense. *See* USSG § 2B3.1(b)(2)(F). Although the Government honored its agreement to recommend 63 months of incarceration, the District Court sentenced Appellant at the top of the Guidelines range: 96 months of incarceration, 36 months of supervised release, and a $100 special assessment. After detailing Appellant's extensive criminal history, which included eighteen prior convictions, including seven convictions for gun crimes, the District Court explained its sentence as follows:

[T]he reason, Mr. Smoot, is not that you haven't taken responsibility . . . . It's because of what you did and what you have done in your past. And the bottom line is, sometimes judges need to take a step back and ask themselves, what is in the best interest of the community to protect people, and this is one of those cases. . . . [A longer sentence is] an additional period of time that you are not in the community, it's an additional period of time that [you] are not putting people at risk.

Appendix ("A.") 338.

Appellant then filed a timely appeal with this court.

## II. ANALYSIS

### A. Ineffective Assistance of Counsel

Appellant presses three claims of ineffective assistance of counsel. First, he asserts that his counsel was inadequately prepared for trial. Second, he contends that his counsel failed to object to an erroneous, prejudicial finding by the District Court during sentencing. Third, he alleges that a conflict of interest existed between him and his counsel.

A defendant claiming ineffective assistance of counsel must "show two things: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense." *In re Sealed Case*, 901 F.3d 397, 404 (D.C. Cir. 2018) (quoting *United States v. Anderson*, 632 F.3d 1264, 1268 (D.C. Cir. 2011)). When an ineffective assistance of counsel claim is raised on direct appeal, this court generally remands the case to allow the district court to develop a factual record and address the merits of the claim in the first instance. We decline to remand only if "the record alone conclusively shows

that the defendant either is or is not entitled to relief." *Id.* (quoting *United States v. Bell*, 708 F.3d 223, 225 (D.C. Cir. 2013)).

Appellant's first claim – that counsel was inadequately prepared for trial – fails because he has not shown that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The evidence against Appellant was overwhelming, including: high definition surveillance footage from the bank; forensic DNA, fingerprint, and handwriting evidence; physical evidence taken from a house where Appellant was residing; and statements from a witness who identified Appellant as the person in the surveillance video. GPS trackers led police officers to a residence where Appellant was staying. Appellant was there when the officers arrived, he was seen with what appeared to be a large wad of currency, and he fled when the police officers attempted to detain him. When he was eventually arrested, he was wearing a watch and shoes that matched those worn by the robber at the bank.

In addition, if Appellant had gone to trial, he would have lost the benefit of the offense level reduction for acceptance of responsibility. The three-point reduction lowered his Guidelines range from 100 to 125 months to 77 to 96 months. *See* USSG § 5A. Given the overwhelming evidence against him and the "somewhat favorable" terms of the plea agreement, Appellant has failed to show a reasonable probability that, had counsel been better prepared, he would not have pled guilty and would have insisted on going to trial. *United States v. Hunt*, 560 F. App'x 2, 3–4 (D.C. Cir. 2014).

Appellant's second ineffectiveness claim is based on an alleged finding made by the District Court during sentencing

that Appellant used a gun during the robbery. Appellant asserts that his counsel was ineffective for failing to object to this finding. This claim fails, however, because the District Court made no such finding. To the contrary, the District Court did not apply any of the gun enhancements in his Guidelines computation. And during the sentencing hearing, the District Court repeatedly said that no one knew whether Appellant was armed during the robbery. In short, counsel could not have been ineffective for failing to object to a finding that Appellant was armed during the robbery because that finding was never made.

Although it is not entirely clear from his briefing, Appellant appears to raise a third claim of ineffective assistance of counsel based on an alleged conflict of interest with his trial counsel. Conflict of interest claims "are a 'specific genre' of ineffective assistance of counsel claim." *United States v. Wright*, 745 F.3d 1231, 1233 (D.C. Cir. 2014) (quoting *United States v. Bruce*, 89 F.3d 886, 893 (D.C. Cir. 1996)). "[I]f a defendant can show that 'a conflict of interest actually affected the adequacy of [the attorney's] representation,' he 'need not demonstrate prejudice in order to obtain relief.'" *United States v. Gray-Burriss*, 791 F.3d 50, 62 (D.C. Cir. 2015) (alteration in original) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980)). Here, Appellant has failed to even allege that a conflict of interest "actually affected" his counsel's performance. *Id.* at 62–63 ("When a defendant claims a conflict between himself and his attorney, he must show that the attorney was 'forced to make a choice advancing his own interest at the expense of his client's.'" (quoting *United States v. Taylor*, 139 F.3d 924, 930 (D.C. Cir. 1998))). Therefore, to the extent that Appellant is arguing a third claim of ineffective assistance based on a conflict of interest, that claim also fails.

Relatedly, Appellant asserts that the District Court erred by failing to adequately inquire into the alleged conflict of interest and by failing to grant Appellant's motion for substitute counsel. When an indigent defendant seeks appointment of substitute counsel, a district court is generally obligated to "engage the defendant in a colloquy concerning the cause of the defendant's dissatisfaction with his representation." *United States v. Graham*, 91 F.3d 213, 221 (D.C. Cir. 1996). A defendant challenging the denial of a motion to substitute counsel must show that he was not "afforded effective representation" in order to show that denial of the motion was prejudicial. *Id.* (quoting *United States v. Zillges*, 978 F.2d 369, 372 (7th Cir. 1992)). As noted above, the record conclusively shows that Appellant was not prejudiced by his counsel's performance. Therefore, Appellant's claims the District Court should have inquired more deeply into his counsel's performance and should have granted his motion for substitute counsel also fail. *See id.* at 222 ("[Appellant's] claim to substitute counsel must fall with his claims to have received ineffective assistance from his court-appointed lawyer.").

## B. Judicial Participation in Plea Negotiations

Appellant also asserts that the District Court impermissibly participated in plea negotiations in violation of Rule 11. *See* Fed. R. Crim. P. 11(c)(1) ("The court must not participate in [plea] discussions."). This court has held that a trial judge may violate Rule 11 "even in cases where the district judge technically did not participate in discussions with a view toward a plea agreement." *United States v. Baker*, 489 F.3d 366, 371 (D.C. Cir. 2007) (quoting *United States v. Cannady*, 283 F.3d 641, 644 (4th Cir. 2002)).

Because Appellant did not object to the Rule 11 violation at the time when it allegedly occurred, he cannot succeed on this claim unless we find plain error. *See United States v. Davila*, 569 U.S. 597, 608 (2013); *see also id.* at 608–11 (rejecting the argument that judicial participation in plea bargaining claims under Rule 11 should be treated differently than other Rule 11 claims). "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *Id.* at 608 (alteration in original) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

Appellant has failed to show plain error. To the contrary, the record is clear that the District Court did not violate Rule 11. During the hearing in question, the District Court merely explained the terms of the Government's plea offer and answered Appellant's questions about the offer. None of the District Court's statements during that hearing could reasonably be viewed as an attempt to influence or coerce Appellant, nor did these statements otherwise constitute impermissible participation in the plea negotiation.

Appellant argues that the District Court attempted to convince him to take the plea offer by going "further than just an observation when it actually argued with the appellant about the favorability of the plea terms." Appellant's Br. 44. But the transcript from the September 1 hearing does not support this claim. Rather, what the record shows is that the District Court accurately characterized the offer as "a slightly more favorable plea offer" – as a result of the removal of a mandatory forfeiture provision – than the Government's prior offer. A. 119. The District Court's characterization of the pending offer as "slightly more favorable" was a description, not an

endorsement. And the trial judge never said anything to press Appellant to accept the plea offer. Indeed, Appellant rejected the offer after the trial judge explained it. In these circumstances, we reject the suggestion that the District Court impermissibly participated in plea bargaining.

Appellant also argues that the District Court "entered into the plea negotiations by describing the government intentions and predicting what the government wished to offer and what it would not offer in further negotiations." Appellant's Br. 44. Without question, certain predictions by a trial judge – for example, that the Government will not make a better offer, or that a defendant will receive a higher sentence if convicted following trial – might be viewed as coercive. *See, e.g.*, *Baker*, 489 F.3d at 374. However, in this case, the statement that Appellant characterizes as a "predict[ion]" was merely a restatement by the District Court of the Government's position that it would not offer the kind of global plea agreement that Appellant had requested. *See* A. 129 ("That's your answer, Mr. Smoot, that the government is not prepared to do any more than it's offered to you today."). Such a statement does not constitute improper judicial participation in plea bargaining.

Furthermore, in order to establish plain error, Appellant must show that he was prejudiced by the District Court's statements. As noted above, Appellant rejected the plea offer during the September 1, 2017, hearing, and then accepted the proposed deal more than two weeks later. Appellant does not claim that he accepted the plea because of anything said or done by the trial judge. And there is nothing in the record to indicate that Appellant was in any way coerced by the District Court. He acted of his own volition when he accepted the plea deal. Therefore, we find no prejudice to Appellant's decision to plead guilty. *See Davila*, 569 U.S. at 601.

## C. Abuse of Discretion at Sentencing

Appellant also argues that the District Court abused its discretion at sentencing by relying on Appellant's prior weapons convictions in crafting the sentence. However, this claim is covered by the appeal waiver in Appellant's plea agreement. It is well settled that such waivers are enforceable "if the defendant has the requisite awareness and understanding of 'the risks involved in his decision.'" *In re Sealed Case*, 901 F.3d at 400 (quoting *United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009)). Appellant has not argued that he lacked the requisite understanding of the risks involved, nor has he otherwise challenged the validity of his appeal waiver. Therefore, Appellant waived his right to raise this claim on appeal.

## III. CONCLUSION

For the reasons stated herein, the conviction and sentence are affirmed.

*So ordered.*